[No. 31111.  *En Banc.*  April 10, 1950.]

ANNE MARIE SMITH, *Respondent,* v. EMIL JAMES SMITH, *Appellant.*[1]

*Allen, Hilen, Froude & DeGarmo,* for appellant.

*Everett O. Butts,* for respondent.

DONWORTH, J.—This action was instituted for the purpose of obtaining a decree of separate maintenance.  In order to understand the legal problems involved, it is necessary to

[1]Reported in 217 P. (2d) 307.

review the steps taken by the parties in connection with this action. The plaintiff and respondent will be referred to as the wife and the defendant and appellant will be referred to as the husband.

The parties were married in New York City in 1931, and at the time of the commencement of this action resided in the Laurelhurst district in Seattle, Washington. The husband was employed as a senior aeroplane pilot by United Air Lines. Three children were born of this marriage, a son now fifteen years of age and twin daughters four years of age at the present time. Just prior to moving to Seattle on September 1, 1946, the parties resided in Portland, Oregon, where the husband became infatuated with a married woman. This was the basis for the estrangement between husband and wife.

On April 13, 1947, the parties executed an agreement (which is hereinafter referred to as the Seattle agreement) in contemplation of their separation in which they made provision for the sale of their home in Seattle and the disposition of the proceeds thereof, as well as the division between them of their personal property. It was further provided in this agreement that the wife should have the sole custody of the three children, subject to the husband's right to visit them at reasonable times. In this agreement, the husband obligated himself to pay for the support of his wife and children the sum of $350 per month, commencing May 17, 1947. In the event that 61% of the husband's gross earnings should exceed $350 per month, he agreed to pay his wife an amount equal thereto. These payments were to be net to the wife, the husband agreeing to pay any tax, such as income tax, due thereon.

On April 29, 1947, the wife filed the complaint in this case in the superior court of the state of Washington for King county, asking for separate maintenance in accordance with the agreement of the parties and that she be awarded the property which the parties had agreed therein should be given to her. The summons and complaint were served on the husband at the time the agreement was executed.

No other proceedings were had in this suit until January, 1949, except that on September 7, 1948, an order adjudging the husband in default for want of appearance was entered by the court.

The scene of activities then shifted to Bridgeport, Connecticut.

Sometime in the latter part of April, 1947, the wife took the three children and went to Bridgeport, Connecticut, where she occupied a house at 3252 east Main street, which belonged to her father, and for which she paid monthly rental until her husband discontinued making maintenance payments to her.

The wife remained in Bridgeport from April, 1947, until January, 1949, except that a reconciliation (which failed) was attempted in Seattle in May, 1948. This lasted only nine days and was terminated by the husband's announcement that he could not overcome his infatuation for the married woman hereinbefore mentioned.

During the time the wife was in Bridgeport, the husband charged her with certain marital misconduct, which she partially denied. The husband went to Bridgeport and, on August 11, 1948, filed a suit for a divorce in the superior court of the state of Connecticut for the county of Fairfield on the ground of this misconduct. This was done pursuant to certain provisions of the Connecticut statute (Vol. III General Statutes of Connecticut, Revision of 1949, § 7334). On the following day, the wife was served in Bridgeport with the summons and complaint in this divorce action.

On October 30, 1948, the parties entered into another separation agreement (herein referred to as the Bridgeport agreement), which was executed by the husband and wife at the office of I. J. Cohn, a licensed attorney who was representing the wife. The husband was represented in connection with the preparation of this agreement by David Goldstein, another Bridgeport attorney. It was acknowledged November 1, 1948, by each of the parties before a notary public. The agreement recites the pendency of the divorce action in the superior court for Fairfield county. It

is too long to quote in full, but certain particularly pertinent portions thereof will be set forth later in this opinion.

On December 7, 1948, the law firm of Bartlett, Keeler & Cohn entered their appearance as attorneys for the wife in the divorce action, and, on the following day, the husband's attorneys, Goldstein & Peck, moved that the action be placed on the uncontested list because of the failure of the wife to file an answer.

On December 23, 1948, the divorce complaint was amended by adding thereto an allegation to the effect that, during their married life, the wife had been guilty of intolerable cruelty to the husband. On the same day, the superior court for the county of Fairfield granted the husband a divorce from the wife and awarded to him the custody of the three children, with the right of reasonable visitation to the wife. An exemplified copy of this decree was later introduced in evidence in the separate maintenance action with which we are concerned.

In January, 1949, the wife returned to Seattle and, on January 20th, without notice to the husband, after an *ex parte* hearing, was granted a judgment (in effect a decree of separate maintenance) which awarded her the sole custody of the three children, with the right to the husband to visit the children at reasonable times and places. This judgment was based on findings of fact and conclusions of law which followed the allegations of the complaint and the provisions of the Seattle agreement dated April 13, 1947. The judgment ordered and directed the parties "to carry out the terms of their said agreement."

There is nothing in the record to indicate that either the Bridgeport agreement of October 30, 1948, or the proceedings in the Bridgeport divorce suit were called to the attention of the court at this hearing.

On February 24, 1949, the wife filed an affidavit stating that the husband had not paid the $350 which became payable on February 20, 1949, and that he was in contempt of court for failure to comply with the judgment entered on January 20, 1949. Thereupon, an order to show cause was

issued requiring the husband to show cause why he should not be punished for contempt of court for failure to obey the judgment.

On the same day, the husband filed a petition to vacate the judgment of January 20, 1949, in the separate maintenance action on the ground that the court had lost jurisdiction because the parties were fully divorced on December 23, 1948. This petition was supported by the husband's affidavit in which he referred to the execution of the Bridgeport agreement of October 30, 1948, a full copy of which was attached to his affidavit, and also to the Bridgeport divorce suit, a copy of the decree being also attached to his affidavit. A show cause order was thereupon issued directing the wife to show cause why an order should not be entered as prayed for in the husband's petition. This order directed that a copy of the show cause order, the petition to vacate the judgment, and the husband's affidavit be served upon the wife at least twenty days prior to the date set for the hearing thereon.

The husband's petition to vacate the judgment was heard by the court on March 25, 1949, upon affidavits. No oral testimony was offered by either party. The court considered three affidavits of the wife, the affidavit of the husband, those of the two Bridgeport attorneys who respectively represented each of the parties in the divorce action, and also the affidavit of the wife's Seattle counsel. In their affidavits, each party charged the other with marital misconduct. As a result of this hearing, the court entered findings of fact and conclusions of law to the effect that it had at all times since April 17, 1947, had jurisdiction of the persons and property of the parties and that the parties had never become domiciled in the state of Connecticut, and further found that the superior court for Fairfield county, Connecticut, had never had jurisdiction of the persons of the parties to grant a divorce and had no authority to make disposition of either the children or the property of the parties.

Based on these findings, the court, on March 28, 1949, entered its judgment and decree denying the husband's petition to vacate the judgment of January 20, 1949, and adjudged the husband to be in contempt of court, giving him leave to purge himself thereof by immediate compliance with that judgment. From the judgment and decree of March 28, 1949, the husband has appealed to this court and assigns as error the entry of that judgment and decree.

The sole question discussed in the briefs and upon the oral argument in this court is whether, under the provisions of Article IV, § 1, of the United States constitution (generally referred to as the full faith and credit clause) the superior court of the state of Washington for King county was correct in holding that the decree of the superior court for Fairfield county, Connecticut, dated December 23, 1948, granting the husband a divorce from the wife, was void for want of jurisdiction.

The husband, in support of his argument that this divorce decree must be accorded full faith and credit, principally relies on the recent decisions of the United States supreme court in the cases of *Sherrer v. Sherrer,* 334 U. S. 343, 92 L. Ed. 1429, 68 S. Ct. 1097, 1 A. L. R. (2d) 1355, and *Coe v. Coe,* 334 U. S. 378, 92 L. Ed. 1451, 68 S. Ct. 1094, 1 A. L. R. (2d) 1376. The wife bases her contention that the Connecticut divorce decree is void upon the cases of *Williams v. North Carolina,* 325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092, 157 A. L. R. 1366, and *Esenwein v. Commonwealth ex rel. Esenwein,* 325 U. S. 279, 89 L. Ed. 1608, 65 S. Ct. 1118, 157 A. L. R. 1396, and cites, in addition, the following decisions of this court: *Mapes v. Mapes,* 24 Wn. (2d) 743, 167 P. (2d) 405; *Wampler v. Wampler,* 25 Wn. (2d) 258, 170 P. (2d) 316; and *Maple v. Maple,* 29 Wn. (2d) 858, 189 P. (2d) 976.

In view of the conclusion that we have reached with respect to the effect of the Bridgeport agreement of October 30, 1948, we do not find it necessary to decide this very interesting question of constitutional interpretation. See 1 A. L. R. (2d) 1385.

In this state, the trial court in an action for separate maintenance has power to award periodic payments to the wife and to impose a lien upon the community property as security therefor. *Cohn v. Cohn,* 4 Wn. (2d) 322, 103 P. (2d) 366; *Jensen v. Jensen,* 20 Wn. (2d) 380, 147 P. (2d) 512; *Cummings v. Cummings,* 20 Wn. (2d) 703, 149 P. (2d) 155; *Campbell v. Campbell,* 30 Wn. (2d) 40, 190 P. (2d) 716.

We do not find it necessary in this case to decide whether the court has power in a suit for separate maintenance to enforce an agreement made by the spouses regarding the division of their property and the custody of their children.

The judgment of January 20, 1949, was based upon a finding to the effect that the husband had expressed his willingness to pay $350 per month for the support of the wife and the children. This judgment awarded the custody of the children to the wife and ordered the husband, pursuant to the Seattle agreement of April 13, 1947, to pay to the wife "toward the support of her children" the sum of $350 per month, or 61% of his earnings, whichever might be the greater. This judgment contained this further provision:

". . . and in all respects in connection therewith the parties are ordered and directed to carry out the terms of their said agreement, on file herein as Plaintiff's Exhibit 1, . . ."

It should be noted that, when this judgment was entered, the children were in the husband's custody. They were in his custody at all times between November, 1948, and March, 1949.

At the time of the entry of this judgment, the wife failed to bring to the attention of the court the fact that the parties had executed the Bridgeport agreement, which was then in full force and effect and, under the Connecticut law, was operative as a contract independently of the Connecticut divorce proceedings. *Lasprogato v. Lasprogato,* 127 Conn. 510, 18 A. (2d) 353. In our opinion, it was intended to, and did, abrogate the Seattle agreement which the court ordered the parties to carry out.

The Bridgeport agreement consists of eight typewritten pages and will not be quoted in full, but we set forth below the preliminary recitals and seven paragraphs thereof. These portions read:

"AGREEMENT made this 30 day of October, 1948, by and between EMIL JAMES SMITH of the City of Seattle, County of King and State of Washington, hereinafter called the 'First Party', and ANNE MARIE SMITH of the City of Bridgeport, County of Fairfield and State of Connecticut, hereinafter called the 'Second Party',

"WITNESSETH:

"WHEREAS, the parties hereto intermarried in the City of New York and State of New York on May 26, 1931, and are now husband and wife; and

"WHEREAS, there is issue of said marriage, viz.: Stephanie Smith, born November 20, 1945; Nicholie Smith, born November 20, 1945; and Emil James Smith, Jr., born November 19, 1934; and

"WHEREAS, unfortunate disputes and differences have arisen between the parties hereto as a result of which they are now living separate and apart; and

"WHEREAS, the parties hereto desire to provide for the custody of said minor children; and

"WHEREAS, the First Party has instituted an action against the Second Party for a divorce; said action being returnable on the first Tuesday of September, 1948 at the Superior Court for Fairfield County; and

"WHEREAS, the parties hereto are desirous of entering into an agreement for the purpose of confirming this separation and of all matters in connection therewith;

"Now, THEREFORE, in consideration of the mutual and dependent covenants hereinafter set forth, the parties hereto agree as follows: . . .

"3. The First Party [the husband] shall have the sole custody of said minor children during the period of separation and also in the event either party should obtain a divorce from the other, subject however, to the condition that the Second Party [the wife] should have the right of reasonable visitation. . . .

"5. *The First Party shall not be obliged to support or maintain the Second Party while the parties are living separate and apart from each other* and in the event the Second Party should apply for a divorce from the First Party in any Court of competent jurisdiction, *said Second*

*Party agrees that she will not seek any alimony or support from the First Party in said action,* nor will the Second Party seek any alimony pendente lite in the action now pending in the Superior Court for Fairfield County.

"6. The Second Party accepts the provisions herein in lieu of and in full settlement and satisfaction *of any and all claims and rights against the First Party for her support and maintenance* and in full settlement and satisfaction of any and all other claims and rights whatsoever (including, but not by any way of limitation, dower and all rights under the laws of testacy and intestacy), which she ever had, now has, or might hereafter have against the First Party by reason of their relationship as husband and wife, *or otherwise.* The Second Party hereby releases and acquits the First Party and his estate of and from any and all claims, liabilities, and obligations whatsoever, except only such as are specifically assumed by or imposed upon the First Party hereunder. *It is the intention of the parties that except as otherwise provided herein, all liability of whatsoever nature on the part of the First Party to the Second Party, past, present and future, actual or potential, whether arising from their relationship as husband and wife or otherwise, shall cease and terminate absolutely and forever.* So long as the First Party shall duly perform the terms and conditions of this agreement on his part to be performed, the Second Party shall not at any time hereafter incur any debt or obligation for which the First Party or his estate may be or may become liable; and the Second Party shall at all times hereafter, *so long as* the First Party shall duly make the payments herein provided for, keep the First Party and his estate free and harmless from any and all debts and obligations. . . .

"10. The provisions of this agreement shall not be construed to prevent either party from suing for an absolute *or limited divorce* in this or any other competent jurisdiction upon such grounds as they shall elect or as they may be advised; *but,* in the event a decree of divorce is obtained by either party, *the provisions of this agreement shall be incorporated in said decree and shall be binding upon the parties hereto* since it is the intention of the parties *that this agreement be absolute, unconditional and irrevocable.*

"11. The parties have incorporated in this agreement their entire understanding. *No oral statement or prior written matter extrinsic to this agreement shall have any force or effect.* The parties are not relying upon any representations other than those expressly set forth herein.

"12. If the marriage between the parties hereto shall be dissolved, by the order, judgment, or decree, of any court of competent jurisdiction, then, and in such case, the consideration mentioned herein, passing from the First Party to the Second Party, *shall be in full satisfaction and discharge of alimony,* counsel fee*l and other claims and demands that might, or could, be made* by the Second Party against the First Party, *for any cause whatsoever.*

"13. The First Party accepts the provisions herein in lieu of and in full settlement and satisfaction of any and all claims and rights whatsoever (including, but not by any way of limitation, dower and all rights under the laws of testacy and intestacy), which he ever had, now has, or might hereafter have against the Second Party by reason of their relationship as husband and wife, or otherwise. The First Party hereby releases and acquits the Second Party and her estate of and from any and all claims, liabilities and obligations whatsoever, except only such as are specifically assumed by or imposed upon the Second Party hereunder. It is the intention of the parties that except as otherwise provided herein, all liability of whatsoever nature on the part of the Second Party to the First Party, past, present and future, actual or potential, whether arising from their relationship as husband and wife or otherwise, shall cease and terminate absolutely and forever. So long as the Second Party shall duly perform the terms and conditions of this agreement on her part to be performed, the First Party shall not at any time hereafter incur any debt or obligation for which the Second Party or her estate may be or may become liable." (Italics ours.)

With respect to the wife's execution of this agreement, her Bridgeport attorney deposed in his affidavit:

"Mrs. Smith signed, at my office, the October 30, 1948 written agreement with her husband after she had read it and after I satisfactorily answered all her questions in relation thereto. Thereafter, I filed our appearance in Mrs. Smith's behalf in the divorce action."

The wife, in one of her affidavits, stated that she was not furnished with a copy of the Bridgeport agreement at the time of its execution. However, she was furnished with a copy later. A copy was attached to the husband's affidavit in support of his petition to vacate the original judgment.

The show cause order required that this affidavit be served on the wife at least twenty days prior to the hearing on this petition.

While the husband's petition to vacate the judgment of January 20, 1949, was based on the ground that the parties had been divorced in Connecticut prior to its entry, nevertheless, the Bridgeport agreement was before the trial court and its effect upon the rights and obligations of the parties should have been considered by the court. No doubt the arguments of counsel were devoted exclusively in the trial court (as they were in this court) to the question of the validity of the Connecticut divorce decree and the weight to be accorded it under the full faith and credit clause of the United States constitution. Thus, the attention of the trial court was not directed to the Bridgeport agreement.

■ The rule applicable to such a situation as here presented is stated in 49 C. J. S. 551, § 299, as follows:

"*Grounds of application.* A judgment should not be opened or vacated unless it is found that one of the statutory or other recognized grounds for such action exists. It has generally been held that the court should limit its consideration to such grounds for opening or vacating the judgment as are set forth in the application, but it has been held that the application should be granted where sufficient grounds appear of record, although not relied on by the party seeking relief."

See *Skinner v. Terry,* 107 N. C. 103, 12 S. E. 118.

■ We hold that, since the Bridgeport agreement is included in the statement of facts, sufficient grounds appear in the record in this case to warrant granting the husband's petition.

The effect of the wife's executing the Bridgeport agreement was to release her husband from all obligation to support her, whether arising from the marital relation or otherwise. After October 30, 1948, he had no duty to pay her $350 per month or any other sum. By inducing the court on January 20, 1949, upon an *ex parte* hearing, to award her such monthly payments in the separate maintenance action, without disclosing the fact that she had signed

the Bridgeport agreement, the wife perpetrated a fraud upon the court. 1 Freeman on Judgments (5th ed.) 463, § 233. The judgment entered on that date must be vacated under the provisions of Rem. Rev. Stat., § 464 (4) [P.P.C. § 71-1], since the husband had a substantial defense based on the fact which the wife concealed from the court. *State ex rel. Nelms v. Superior Court*, 148 Wash. 24, 267 Pac. 775.

■ The husband cannot be held to be in contempt of court for failure to pay a separate maintenance allowance when his wife had previously, by written agreement, released him from all obligation to support her. We are compelled to hold that, under the facts disclosed by the record in this case, the trial court abused its discretion in denying the husband's petition to vacate the judgment of January 20, 1949, and erred in entering its judgment and decree of March 28, 1949.

Therefore, the judgment and decree of March 28, 1949, denying the husband's petition to vacate the original judgment and adjudging him to be in contempt for failure to make the monthly payments to the wife in accordance therewith, is reversed with instructions to vacate the judgment of January 20, 1949.

ALL CONCUR.