[No. 8768-9-III.   Division Three.   June 27, 1989.]

RAY A. MOSBRUCKER, ET AL, *Respondents*, v. GREENFIELD
IMPLEMENT, INC., ET AL, *Defendants*, L.L. CLARK,
*Appellant*.

*Robert Birk,* for appellant.

*Ralph Nickerson,* for respondents.

SHIELDS, J.—Larry Clark, an Oregon resident, appeals from an order denying his motion to vacate a default judgment taken against him by Janice and Ray Mosbrucker.[1] The sole issue is whether the court abused its discretion in denying his motion to vacate. We reverse and remand for further consideration consistent with this opinion.

This action arises out of a 10–year lease of business properties in Goldendale, Washington, between the Mosbruckers, as lessors, and Greenfield Implement, Inc., as lessee, commencing June 1, 1979. Rent began at $900 monthly during completion of improvements, alterations and repair of the premises and graduated to $2,040 monthly, plus taxes and insurance. Mr. Clark, Robert Smith, and Robert Jewett initially signed the lease, both as officers of Greenfield and as coguarantors. However, it is uncontroverted that at the time the complaint was filed Mr. Clark's signature as guarantor and the words under it, "Robert Clark–Guarantor", had been crossed out. The alteration was initialed by an encircled "RS", presumably Robert Smith.

Greenfield subsequently assigned the lease to Greenline, Inc. Greenline defaulted, which led to this suit by Mr. and Mrs. Mosbrucker against both corporations and the guarantors for the rent arrearages plus costs and attorney fees. The Mosbruckers had the summons and complaint served on Mr. Clark in Oregon on March 25, 1986. On January 8, 1987, they moved for an order of default, because Mr. Clark had not appeared or responded in any manner. The motion was granted January 20, and an order of default entered.

---

[1]Appeal was initially made from the trial court's memorandum opinion filed July 7, 1987. The order was entered by the court October 20, 1987, after a decision by the Commissioner of this court that the case was appealable.

On January 22, the Mosbruckers obtained a default judgment against Mr. Clark for $26,023.94.[2]

On May 11, 1987, Mr. Clark moved to set aside the judgment. His motion and this appeal from its denial are based on "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order", CR 60(b)(1), and "[f]raud . . ., misrepresentation, or other misconduct of an adverse party", CR 60(b)(4). Initially, by way of affidavit, Mr. Clark asserted he signed the lease only in a representative capacity as a trust officer of a bank charged with administering a trust holding stock in Greenfield and Greenline. He maintains the Mosbruckers knew or should have known he was a trust officer, because he was introduced as such during negotiations for the lease and that fact was discussed when the lease was signed. He was discharged from his duties in 1980, but the bank continued to administer the trust. He stated he assumed the bank would defend the lawsuit.

The Mosbruckers responded they had no notice Mr. Clark signed as an agent and, in fact, had never met him. He was not present at the meeting in which the lease was signed by the other parties but his signature was obtained earlier, apparently by Robert Smith. The Mosbruckers were among the last to sign on June 6, 1979, and did so only in the presence of Robert Jewett.

The Mosbruckers also pointed out the summons and complaint did not name the bank as a party. The default was not taken until 9 months after the complaint was filed, during which time they received no response from Mr. Clark. They further asserted Mr. Clark did not respond to the notice of registration of a foreign judgment within the 20 days allowed by Oregon law after the default judgment

---

[2] The motion, order of default, and default judgment were also made against Mr. Jewett and Greenfield, who had appeared but had not filed an answer to the complaint. The motion also included a request to dismiss the action without prejudice against Greenline and Robert Smith on the basis they were suspected of avoiding service of process of the subject complaint but had been located and served in a separate action.

was obtained. He did respond when supplemental proceedings were filed.

After the foregoing affidavits were submitted, Mr. Clark raised a second basis for vacating the judgment, which he claimed did not become apparent until after his attorney obtained a copy of the lease from the Klickitat County Auditor and a copy of the file from the Superior Court. He maintained he was released from his guaranty by virtue of the alteration which deleted his signature and capacity as guarantor. His attorney asserted the alteration was on the copy of the lease which the Mosbruckers had filed with the county auditor. Prior to the lease being filed with the county auditor, it was held by a title insurance company in which the Mosbruckers were principals. The Mosbruckers admitted the alteration deleting Mr. Clark's name was also on their copy of the lease which they obtained from their safe–deposit box in preparation for commencement of this action, although they maintained the alteration was not present when they signed the lease, and they did not consent to the deletion or to a release. Mr. Clark stated the lease was not included in a copy of the file his attorney obtained from the Superior Court, and a copy of the lease had to be added to the file by the Mosbruckers' attorney at the time of the motion. He maintained the court which granted the default judgment may not have seen this alteration, because the lease may not have been in the file.

In denying the motion to vacate, the court applied the analysis of *White v. Holm,* 73 Wn.2d 348, 352, 438 P.2d 581 (1968) which set forth a 4–part test for a motion to vacate based on mistake, inadvertence, surprise or excusable neglect:

> (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default

judgment; and (4) that no substantial hardship will result to the opposing party.

Based on *White,* the court determined Mr. Clark barely presented a prima facie defense. That court also determined that Mr. Clark's failure to timely appear or answer, based on his belief the bank would defend the suit, did not constitute excusable neglect. Because of these factors, and the potential hardship to the Mosbruckers as a result of a possible forfeiture of the property, the court denied Mr. Clark's motion to vacate the default judgment.

In *State v. A.N.W. Seed Corp.,* 44 Wn. App. 604, 607, 722 P.2d 815 (1986), this court set forth the applicable standard of review:

> A motion to vacate is addressed to the sound discretion of the trial court and this court may not disturb that disposition unless it clearly appears abuse of discretion has occurred; . . .

We find no abuse of discretion in the court's application of the *White* factor as to Mr. Clark's claim of excusable neglect. The affidavits provided ample evidence upon which it could be concluded Mr. Clark's failure to timely respond to the summons and complaint was not excusable. Neither does his claim of agency, without more, present a strong defense to liability arising from his personal signature as guarantor. *See* H. Reuschlein & W. Gregory, *Agency & Partnership* § 118, at 182–83 (1979).

However, the court's opinion does not reflect whether it considered Mr. Clark's claim that the lease may not have been before, or called to the attention of, the judge who granted the default order and judgment. The record does not reflect any explanation for the fact that the lease could not be located in the file when Mr. Clark's attorney requested a copy of the lease from the Superior Court. The inference that the lease may never have been in the file presents a stronger basis for a claim of irregularity in the default judgment. This situation was not addressed in *White.* Based on the record before us, we conclude this basis warranted consideration by the trial court.

■ Irregularities pursuant to CR 60(b)(1) occur when there is a failure to adhere to some prescribed rule or mode of proceeding, such as when a procedural matter that is necessary for the orderly conduct of trial is omitted or done at an unseasonable time or in an improper manner. *In re Adamec,* 100 Wn.2d 166, 174, 667 P.2d 1085 (1983); *State v. Price,* 59 Wn.2d 788, 791, 370 P.2d 979 (1962); *Metropolitan Fed. Sav. & Loan Ass'n v. Greenacres Mem. Ass'n,* 7 Wn. App. 695, 698, 502 P.2d 476 (1972). Generally, a copy of a written instrument which is an exhibit to a pleading must be annexed thereto. CR 10(c); 3A L. Orland, Wash. Prac., *Rules Practice* § 5133, at 151 (3d ed. 1980). In this case, failure to annex the lease to the complaint, or to provide it when the default judgment was obtained, could significantly impact the proceedings, because the alteration on the lease raises the question whether Mr. Clark had any liability as a guarantor for the judgment sought.

A claim of irregularity is not controlled by the test set out in *White,* which applies to cases involving excusable neglect or inadvertence. *See, e.g., Smith v. Smith,* 36 Wn.2d 164, 174, 217 P.2d 307 (1950); *Rowe v. Silbaugh,* 107 Wash. 518, 522, 182 P. 576 (1919); *Pringle v. Pringle,* 55 Wash. 93, 96, 104 P. 135 (1909); *Wilson v. Henkle,* 45 Wn. App. 162, 724 P.2d 1069 (1986); *Wingard v. Heinkel,* 1 Wn. App. 822, 823, 464 P.2d 466, *review denied,* 77 Wn.2d 963 (1970) (involving irregularities rising to the level of fraud). Although we do not believe fraud was a factor in the present case,[3] the challenge here, as in the above cases, goes to the integrity of the proceedings. The facts in *Wilson v. Henkle, supra,* are particularly analogous. There, a commissioner signed an ex parte judgment based on a writ of garnishment, but was not informed the back of the answer to the writ reflected a dispute over ownership of the funds.

---

[3]There is no evidence of a willful or deliberate concealment here. Both the verified complaint and the motion and order of default stated the lease was attached thereto. During oral argument before this court, counsel for the Mosbruckers stated to his knowledge the lease was appended to the complaint and was before the court.

An order vacating the judgment was upheld; the court pointed out the commissioner would not have signed the judgment had this part of the document been revealed to him. Here, the judge granting the default order and judgment may well have refused to do so had he seen that the signature upon which the judgment was sought had been crossed off—a fact which the Mosbruckers knew when they brought suit.

Moreover, Mr. Clark had a substantial defense of release based on the alteration. The Mosbruckers' right to recover would clearly be affected if they acquiesced in the alteration or ratified it. *See Chezum v. McBride,* 21 Wash. 558, 58 P. 1067 (1899); *Teratron Gen. v. Institutional Investors Trust,* 18 Wn. App. 481, 488, 569 P.2d 1198 (1977); 4 Am. Jur. 2d *Alteration of Instruments* § 65 (1962); 3A C.J.S. *Alteration of Instruments* § 81 (1973).[4] The affidavits submitted present such an inference of acquiescence or ratification: (1) Mr. Clark was apparently the first to sign the lease, and the Mosbruckers were one of the last to sign it. (2) The initials "RS" appear next to the alteration. The Mosbruckers presume "RS" is Robert Smith, who obtained Mr. Clark's signature earlier, and who then delivered the lease to the remaining signators. (3) The alteration appeared on the Mosbruckers' copy obtained from their safe–deposit box, on the copy which they filed of record, and on the copy finally furnished to the court.

Based on the record, we conclude the court erred when it limited its consideration to the vacation of the judgment on the basis of excusable neglect and Mr. Clark's capacity as a trust officer under *White v. Holm, supra.* Under *White,* at 352, if a strong defense is demonstrated "scant time will be spent inquiring into the reasons which occasioned entry of the default, provided the moving party

---

[4]The authority Mr. Clark cites to this court involving release by ratification was not cited to the trial court and thus the court may not have been directed to this basis for vacating the judgment. Nevertheless, the record before the court warranted consideration of the effect of the alteration on the rights and obligations of the parties. *See Smith v. Smith, supra* at 174.

is timely with his application and the failure to properly appear in the action in the first instance was not willful." There is no indication Mr. Clark's failure to timely appear was willful.

Further, we note the Mosbruckers have indicated a requirement that Mr. Clark post bond would relieve them of immediate hardship. Considering the policy against hard and fast application of the rules and "the liberality to be applied to preserve substantial rights and do justice between the parties", *Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 584, 599 P.2d 1289 (1979), we believe sufficient facts exist here to support vacating the default judgment.

We therefore reverse and remand for consideration of Mr. Clark's claim of irregularity in obtaining the default judgment and the potential defense of release, with instructions that the court make such order and disposition of the case as the facts warrant, including imposition of appropriate terms if a new trial is granted.

MUNSON, A.C.J., and GREEN, J., concur.