# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Guardianship of:<br><br>CHERYL RUSSELL,<br><br>                    An Incapacitated Person. | No.  51591-1-II<br><br><br>UNPUBLISHED OPINION |

LEE, J. — Earl Russell appeals the superior court's denial of his motion to revise a superior court commissioner's order denying his motion for CR 60(b) relief from an order approving the guardian's reports in his mother's guardianship proceeding.  Earl[1] argues that the superior court abused its discretion in denying his motion to revise because his mother's guardian never provided notice of the underlying proceeding that led to the entry of an order approving the guardian's reports.  He also challenges the superior court's subject matter jurisdiction over his mother's trust and two of the superior court's findings of fact in its order on revision.  We affirm.

FACTS

A.      THE LIVING TRUST

Cheryl Russell established a revocable living trust in 2008.  The trust instrument named Cheryl as the trustee and provided Cheryl exclusive power during her lifetime to control and direct

---

[1]  Because multiple parties share the last name "Russell," we refer to the parties by their first names for clarity.  We mean no disrespect.

payments, remove trust property, and amend or revoke the trust. The trust also provided for the distribution of Cheryl's remaining property to her children upon her death, including to her son Earl.

In 2011, Cheryl amended the trust and designated Earl as the successor trustee in the event of her disability. Under the terms of the trust, Cheryl shall be deemed disabled upon a court determination that she is incompetent, incapacitated, or otherwise unable to effectively manage her property or financial affairs.

B.    ORDER APPOINTING GUARDIAN

In May 2016, Earl filed a petition for guardianship, wherein he alleged that Cheryl, who was 76 years old at the time, was exhibiting signs of dementia and was unable to manage her personal and financial affairs. Earl asked the superior court to appoint a guardian of Cheryl's person and estate.

The superior court appointed a guardian ad litem (GAL) to meet with Cheryl and prepare a written report. Following an investigation, the GAL recommended that Cheryl be found incapacitated and that Anchor Guardianship Services, Inc. be appointed to serve as limited guardian of Cheryl's person and full guardian of her estate.

Earl filed an objection to the GAL's recommendation and asked the superior court to appoint him as guardian for his mother. The court denied this request and on September 2, appointed Anchor Guardianship to serve as full guardian of Cheryl's estate and limited guardian of her person. In its order appointing Anchor Guardianship, the court entered a finding that "[t]here is a [L]iving Trust in place to manage most of Cheryl Russell's financial assets. The trust shall

remain in place for the named trustee to manage assets pursuant to its terms and directions."

Clerk's Papers (CP) at 116. The order also authorized the guardian:

> To close any financial accounts, including bank accounts held individually or jointly with another, and to make withdrawals, deposits or transfer of funds into or out of any such accounts, without the necessity of obtaining the written authority of any other person named on any such joint accounts and opening guardianship accounts for the Incapacitated Person. The signature of the guardian of the estate holds the full force and effect of the signature of CHERYL RUSSELL with all the rights and authority and access to the asset as the signature of CHERYL RUSSELL would provide, whether the account is individually held by CHERYL RUSSELL or held jointly with another person;
>
> . . . .
>
> . . . To convert all holdings, including but not limited to, savings accounts, money market accounts, IRAs, mutual funds, stocks, bonds, cash, automobiles, mobile homes, and any other personal property, including pension annuities, 401Ks and any other income, into the name of said guardian for the purposes of the guardianship.

CP at 119-20.

The superior court's order identified the due date as December 1 for the guardian's 90 day reports, which included the guardian's initial personal care plan, inventory, and proposed budget. The order also listed January 6, 2017, as the next court date to review the 90 day reports.

C.      EARL'S REQUEST FOR SPECIAL NOTICE

On September 26, 2016, Earl filed a request for special notice pursuant to RCW 11.92.150.[2]

In his request, Earl identified himself as "A relative of the Incapacitated Person." CP at 85. He

---

[2] RCW 11.92.150 allows any relative of the incapacitated person in a guardianship proceeding to submit a written request stating the specific action for which he or she request advance notice. If the applicant does not specify which matters for which notice is requested, the guardian or limited guardian "shall provide copies of all documents filed with the court and advance notice of his or her application for court approval of any action in the guardianship." RCW 11.92.150.

asked for "special notice of all matters, steps, and proceeding described in RCW 11.92.150, including a copy of all documents filed with the Court and advance notice of any application for Court approval of any action in the guardianship." CP at 85.

D.     ORDER APPROVING THE GUARDIAN'S 90 DAY REPORTS

On December 2, Anchor Guardianship filed its 90 day reports. The inventory identified a $6,500 monthly trust fund allowance as part of Cheryl's monthly income. The inventory also explained that Cheryl had created a revocable living trust and that Earl was the successor trustee due to Cheryl's incapacity. The inventory stated that "Earl Russell, in his role as Trust Manager, will continue to provide funds from the Trust for IP's use and benefit, as necessary." CP at 52. The inventory also listed the current trust fund balance as approximately $2.5 million. These reports were not served on Earl at the time they were filed.

On December 21, Anchor Guardianship filed a docket notice for the January 6, 2017, hearing. The docket notice identified the nature of the January 6 hearing as "APPROVAL OF FIRST ANNUAL ACCOUNTING." CP at 23. Anchor Guardianship also filed a petition for approval of its 90 day reports. The petition requested that Earl, as trustee of Cheryl's trust, continue to pay $6,500 per month and to also "pay any expenses that exceed her monthly income" from the trust. CP at 38. Anchor Guardianship provided Earl a copy of the petition for approval of 90 day reports and the docket notice of the January 6 hearing.

A hearing on Anchor Guardianship's petition for approval of its 90 day reports was held before the superior court on January 6, 2017. Earl did not attend the hearing. The court entered an order approving Anchor Guardianship's 90 day reports (1/6/17 order). The 1/6/17 order

obligated Earl, as trustee of Cheryl's trust, to pay a monthly sum of $6,500 to the guardianship and "any expenses that exceed the monthly income of [Cheryl]." CP at 10. Earl received a copy of the initial personal care plan and inventory on January 11.

E.    MOTION TO VACATE AND MOTION TO REVISE

On May 12, Earl, in his capacity as trustee of Cheryl's trust, filed an amended CR 60(b) motion to vacate the January 1/6/17 order approving Anchor Guardianship's 90 day reports. Earl acknowledged that he had received a copy of the Anchor Guardianship's petition for approval of 90 day reports on December 23. However, Earl argued that relief from judgment was warranted under CR 60(b)(1) because Anchor Guardianship did not provide him with a copy of the initial personal care plan and inventory until after the January 6 hearing. The petition contained the following request:

> [Cheryl] has funds available in excess of approximately 2.5 million from the Cheryl Russell Living Trust, of which she is the sole beneficiary. Even though [Cheryl] has funds in Vanguard Roth IRA[s], [Cheryl]'s CPA has suggested to the Guardian that funds should be pulled from the Trust and not the IRA[s] if needed to support [Cheryl]. The Guardian is thus requesting the Trustee to continue to pay the $6,500 per month to [Cheryl] and also pay any expenses that exceed her monthly income.

CP at 38.

Earl also argued that the superior court did not have jurisdiction over Cheryl's trust and that the court's lack of jurisdiction was an extraordinary circumstance justifying relief under CR 60(b)(11). Earl claimed that the Anchor Guardianship's failure to make timely service of the initial personal care plan and inventory and to provide him notice of the correct subject for the January 6

hearing were an extraordinary circumstances justifying relief under CR 60(b)(11). On June 16, a superior court commissioner denied Earl's CR 60(b) motion to vacate the 1/6/17 order.

Earl then filed with the superior court a motion to revise the court commissioner's order denying his motion to vacate the 1/6/17 order. Earl argued that the commissioner had ignored the jurisdictional issues he had raised, and he again claimed that the late service of the initial personal care plan and inventory was a procedural irregularity justifying relief.

The superior court heard Earl's motion to revise on November 17. In issuing its oral ruling, the superior court observed that Judge Brosey, who had entered the underlying 1/6/17 order, was "very thorough" and "incredibly attentive to detail." Verbatim Report Proceedings (VRP) (Nov. 17, 2017) at 21. The superior court found that Earl had sufficient notice of the January 6 hearing and held that the late service of the initial personal care plan and inventory was not an extraordinary circumstance justifying relief under CR 60(b)(11). Thus, the superior court denied Earl's motion to revise the commissioner's order denying Earl's CR 60(b) motion to vacate the 1/6/17 order.

The superior court entered several findings of fact in its written order denying Earl's motion to revise, including "the court takes judicial notice of the carefulness of Judge Brosey in matters appearing before him and he vigorously reviews the files before the hearings." CP at 604. The court also entered a finding "that the appropriate remedy for the 1/6/17 order was appeal or request for discretionary review." CP at 605.

Earl appeals the superior court's order denying revision of the commissioner's order denying Earl's CR 60(b) motion to vacate.

ANALYSIS

A.   MOTION FOR REVISION

Earl argues that the superior court erred in denying his motion to revise the court

commissioner's order denying his motion for CR 60(b) relief to vacate the 1/6/17 order because

(1) Anchor Guardianship never provided Earl notice of the January 6 hearing or a copy of the

initial personal care plan and inventory, and (2) the superior court did not have subject matter

jurisdiction over Cheryl's trust.  We disagree.

1.      Standard of Review and Legal Principles

On a motion for revision, the superior court reviews a superior court commissioner's ruling

de novo based on the evidence and issues presented to the court commissioner.  RCW 2.24.050;

*In re the Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010).  When a party appeals

from an order denying revision of a court commissioner's decision, we review the superior court's

decision, not the commissioner's ruling.  *In re Guardianship of Decker*, 188 Wn. App. 429, 438,

353 P.3d 669, *review denied*, 184 Wn.2d 1015 (2015).

We review a superior court's revision of a commissioner's ruling under RCW 2.24.050 for

an abuse of discretion.[3]  *See In re Marriage of Dodd*, 120 Wn. App. 638, 644, 86 P.3d 801 (2004).

A court abuses its discretion if it exercises its discretion on untenable grounds or for untenable

reasons.  *Williams*, 156 Wn. App. at 27.  We defer to the superior court's findings of fact, and we

---

[3]  Earl incorrectly maintains that the standard of review is de novo because he argues that the
superior court made several errors of law.  Alleging that the superior court misinterpreted the law
does not change our standard of review.  However, we will find an abuse of discretion where the
lower court's ruling is based on a misinterpretation of a statute or rule.  *Diaz v. Med. Ctr. Lab.,
Inc.*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012).

do not substitute our judgment for that of the superior court. *In re Marriage of Dodd*, 120 Wn. App. at 644; *State v. Ramer*, 151 Wn.2d 106, 115, 86 P.3d 132 (2004).

"'Irregularities pursuant to CR 60(b)(1) occur when there is a failure to adhere to some prescribed rule or mode of proceeding, such as when a procedural matter that is necessary for the orderly conduct of trial is omitted or done at an unreasonable time or in an improper manner.'" *Lane v. Brown & Haley*, 81 Wn. App. 102, 106, 912 P.2d 1040 (1996) (quoting *Mosbrucker v. Greenfield Implement, Inc.*, 54 Wn. App. 647, 652, 774 P.2d 1267 (1989)).

Relief under CR 60(b)(11) is limited to situations involving extraordinary circumstances that are not covered by any other section of the rule. *Union Bank, N.A. v. Vanderhoek Assocs.*, 191 Wn. App. 836, 844, 365 P.3d 223 (2015). Extraordinary circumstances involve irregularities extraneous to the action of the court and are generally confined to unusual circumstances that are outside the control of either party. *Tatham v. Rogers*, 170 Wn. App. 76, 100, 283 P.3d 583 (2012); *State v. Gamble*, 168 Wn.2d 161, 169, 225 P.3d 973 (2010).

2.      Failure to Provide Notice

Earl first argues that the superior court erred in finding that he had notice of the January 6 hearing, relying on the fact that the docket notice incorrectly identified the nature of the January 6 hearing as "'Approval of First Annual Accounting.'" Br. of Appellant at 23 (quoting CP at 23). Earl also argues that the superior court should have revised the commissioner's ruling and vacated the order approving the guardian's 90 day reports because he did not receive a copy of the initial personal care plan or inventory until after the January 6 hearing. We disagree.

As an initial matter, we note that Earl's arguments conflate his dual roles. Earl filed a petition for guardianship as Cheryl's son. And he requested special notice of all matters and proceedings in the guardianship as "A relative of the Incapacitated Person." CP at 85. However, Earl filed his CR 60(b) motion to vacate and his motion to revise the commissioner's order denying his motion to vacate in his capacity as trustee of Cheryl's trust, not as her relative. Thus, Earl's reliance on his request for special notice *as Cheryl's relative* is misplaced on review of the motions he brought in his capacity as trustee of Cheryl's trust.

Guardianships are created by the courts to protect vulnerable persons who are unable to provide for their basic needs or manage their own financial affairs. RCW 11.88.005. The scope of a guardianship is expressly limited to the minimum extent necessary to adequately protect an incapacitated person's health, safety, or ability to adequately manage his or her financial affairs. RCW 11.88.005. Once appointed, a guardian serves under the general direction and control of the court. *In re Guardianship of Cornelius*, 181 Wn. App. 513, 523, 326 P.3d 718 (2014). However, the court retains the ultimate responsibility for protecting the ward's person and estate. *In re Guardianship of Lamb*, 173 Wn.2d 173, 184, 265 P.3d 876 (2011).

The guardianship statutes provide a mechanism by which interested persons may request notice of actions in the guardianship:

> At any time after the issuance of letters of guardianship in the estate of any person and/or incapacitated person, any person interested in the estate, or in the incapacitated person, or any relative of the incapacitated person . . . may serve upon the guardian or limited guardian . . . a written request stating the specific actions of which the applicant requests advance notice. Where the notice does not specify matters for which notice is requested, the guardian or limited guardian shall provide copies of all documents filed with the court and advance notice of his or her application for court approval of any action in the guardianship.

RCW 11.92.150.

Here, Earl requested notice of actions in Cheryl's guardianship under RCW 11.92.150. Anchor Guardianship provided Earl with a copy of the petition for approval of its 90 day reports and the docket notice for the January 6 hearing. However, the docket notice for the January 6 hearing incorrectly identified the nature of the January 6 hearing as "APPROVAL OF FIRST ANNUAL ACCOUNTING." CP at 23. And Anchor Guardianship did not provide to Earl a copy of the initial personal care plan and inventory until after the hearing.

Earl argues that Anchor Guardianship's failure to comply with the special notice statute was a procedural irregularity compelling relief from judgment under CR 60(b)(1). However, the purpose of notice statutes is to provide due process for a nonmoving party and to allow that party an opportunity to intelligently respond. *See Nisqually Delta Ass'n v. City of DuPont*, 103 Wn.2d 720, 727, 696 P.2d 1222 (1985). Under the facts of this case, Earl was provided due process and was not prejudiced by the defective notice.

It is true that the docket notice of the January 6 hearing incorrectly identified the nature of the January 6 hearing as "APPROVAL OF FIRST ANNUAL ACCOUNTING." CP at 23. However, the order appointing Anchor Guardianship as limited guardian of Cheryl's person and full guardian of Cheryl's estate, a copy of which was provided to Earl, specifically ordered that a hearing to review the guardian's initial reports be held on January 6, 2017. And Anchor Guardianship provided Earl a copy of its petition for approval of 90 day reports on December 23, 2016. The petition clearly stated that Anchor Guardianship was requesting the court to order the trustee of Cheryl's trust to continue to pay $6,500 per month "and to pay any expenses that exceed

[Cheryl]'s monthly income." CP at 39. Thus, the record does not support Earl's contention that he was never provided notice as to the nature of the January 6 hearing that led to the 1/6/17 order.

Therefore, although Anchor Guardianship did not provide a copy of the initial personal care plan and inventory to Earl until after the January 6 hearing, under the circumstances of this case, Earl received due process.[4] The superior court did not abuse its discretion in denying Earl's motion to revise on this basis.

And to the extent Earl's motion to vacate was based on CR 60(b)(11), his delay in receiving a copy of these documents was not an extraordinary circumstance justifying relief. CR 60(b)(11) is a catchall provision that allows a lower court to vacate a judgment for "[a]ny other reason justifying relief." CR 60(b)(11).

Earl makes no effort to explain how late service of the initial personal care plan and inventory constituted an extraordinary circumstance justifying relief under CR 60(b)(11). Instead, he combines his argument under CR 60(b)(11) with his argument under CR 60(b)(1). Because Earl fails to show that late service of these documents was an extraordinary circumstance justifying relief under CR 60(b), he fails to show the superior court's ruling was an abuse of discretion.[5]

---

[4] Earl also filed a statement of additional authorities, citing the Uniform Guardianship, Conservatorship, and Other Protection Arrangements Act, SECOND SUBSTITUTE S.B. 5604, 66th Leg., Reg. Sess. (Wash. 2019). Signed on May 21, 2019, this Act adds a new chapter to Title 11 RCW, and repeals a number of existing guardianship statutes, including RCW 11.92.150. However, the Act does not take effect until January 1, 2021, and is therefore not applicable to the issues raised here. Laws of 2019, ch. 437, § 807.

[5] Earl also raises several arguments on behalf of Cheryl and his sister Holly. We have repeatedly held that a third party does not have standing to raise another party's or an incapacitated person's due process rights. *Decker*, 188 Wn. App. at 445 (former attorney of incapacitated person in guardianship case did not have standing to vindicate her due process rights); *In re Guardianship*

3.      Subject Matter Jurisdiction

Next, Earl challenges the superior court's subject matter jurisdiction over Cheryl's trust. According to Earl, the 1/6/17 order approving the guardian's 90 day reports was void because the superior court did not have subject matter jurisdiction over matters involving Cheryl's trust. We disagree.

We review questions of a court's subject matter jurisdiction de novo. *In re Marriage of McDermott*, 175 Wn. App. 467, 479, 307 P.3d 717, *review denied*, 179 Wn.2d 1004 (2013). A party may challenge subject matter jurisdiction for the first time at any point in the proceeding, including on appeal. *Id*. Even if neither party initially objected to the court's exercise of subject matter jurisdiction, judgments entered without subject matter jurisdiction must be vacated. *Id*.

"A court has subject matter jurisdiction where it has authority 'to adjudicate the type of controversy involved in the action.'" *Id*. at 480-81 (quoting *Shoop v. Kittitas County*, 108 Wn.

---

*of Cobb*, 172 Wn. App. 393, 402, 292 P.3d 772 (2012), *review denied*, 177 Wn.2d 1017 (2013) (siblings of incapacitated person lacked standing to vindicate incapacitated person's constitutional rights). Because Earl lacks standing to raise issues on behalf of Cheryl or Holly, we do not consider any assignment of error on this basis.

Also, Earl devotes substantial argument to challenging the validity of the 1/6/17 order, which he maintains was inaccurate, signed incorrectly, and issued in "secrecy." Br. of Appellant at 36. These arguments are not properly before this court.

An appeal from denial of a motion to vacate is not a substitute for appeal and the "exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from a denial of a CR 60(b) motion." *Bjurstrom v. Campbell*, 27 Wn. App. 449, 451, 618 P.2d 533 (1980). "An appeal from denial of a CR 60(b) motion is limited to the propriety of the denial not the impropriety of the underlying judgment." *Id*. at 450-51. Thus, Earl's challenges to the propriety of the underlying 1/6/17 order are not properly before this court, and we do not consider them.

App. 388, 393, 30 P.3d 529 (2001)).  The Washington Constitution vests superior courts with broad original subject matter jurisdiction.  WASH. CONST. art. IV, § 6.  Exceptions to this broad grant of jurisdiction are to be construed narrowly.  *McDermott*, 175 Wn. App. at 481.  Superior courts retain jurisdiction in "'all cases . . . in which jurisdiction shall not have been by law vested exclusively in some other court'" by either the legislature or an explicit act of Congress.  *Hous. Auth. of Seattle v. Bin*, 163 Wn. App. 367, 375, 260 P.3d 900 (2011) (quoting WASH. CONST. art. IV, § 6).  And the superior court's subject matter jurisdiction "'cannot be whittled away by statutes.'"  *McDermott*, 175 Wn. App. at 481 (quoting *Shoop*, 108 Wn. App. at 396).

Earl argues that the superior court did not have subject matter jurisdiction over Cheryl's trust under the Trust and Estate Dispute Resolution Act (TEDRA), Chapter 11.96A RCW.  However, TEDRA vests "original subject matter jurisdiction over trusts and all matters relating to trusts" in the superior courts.  RCW 11.96A.040(2).  The only support Earl provides to the contrary is *In re the Estate of Rathbone*, 190 Wn.2d 332, 412 P.3d 1283 (2018).  However, *Rathbone* did not address an issue of subject matter jurisdiction, but instead addressed whether a trial court had authority under TEDRA to interpret a will's language and overrule a personal representative's interpretation of that language.[6]  190 Wn.2d at 339.  Given that the superior court had original

---

[6] Earl also quotes, without argument, the language of RCW 11.97.020, which concerns the rules of construction that apply when interpreting the terms of a trust in the disposition of trust property. Earl does not explain how RCW 11.97.020 strips the superior court of subject matter jurisdiction over matters relating to trusts.

subject matter jurisdiction over all matters relating to Cheryl's trust, Earl's challenge on this basis fails.[7]

To the extent Earl argues that the superior court lacked authority over Cheryl's trust assets, he provides no support for this claim. He similarly fails to provide any support for his argument that a guardian must file a separate petition under TEDRA in order "to join the assets of the Trust into the authority of the Guardianship Court." Br. of Appellant at 41. TEDRA vests superior courts with "full and ample power and authority under this title to administer and settle . . . [a]ll trust and trust matters." RCW 11.96A.020(1)(b). It further provides that the superior court "has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2). Thus, Earl's challenge on this basis fails.

B.      CHALLENGED FINDINGS OF FACT

Earl also assigns error to two findings of fact entered by the superior court in its order denying his motion for revision. Both of these challenges fail.

---

[7] Again, Earl improperly raises claims on Cheryl's behalf, arguing that the superior court used her assets without consent and "violated Cheryl's right to autonomy." Br. of Appellant 44. As explained above, Earl does not have standing to advocate on Cheryl's behalf. *See Cobb*, 172 Wn. App. at 402.

1.      Finding Regarding Appropriate Remedy

Earl first argues that the superior court erred as a matter of law in finding that "the appropriate remedy for the 1/6/17 order was appeal or request for discretionary review."[8] CP at 605. Earl's challenge fails because it is well established that the "exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from a denial of a CR 60(b) motion." *Bjurstrom*, 27 Wn. App. at 451. Also, "[e]rrors of law may not be corrected by a CR 60 motion; rather, they must be raised on appeal." *Union Bank, N.A.,* 191 Wn. App. at 843. Therefore, Earl's assignment of error on this basis fails.

2.      Judicial Notice

Next, Earl argues that the superior court erred in taking judicial notice that Judge Brosey carefully prepares for matters appearing before him and vigorously reviews the files before the hearings. We hold that any error would not compel reversal.

Washington judges may take judicial notice of "adjudicative facts." ER 201(a). An adjudicative fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questioned." ER 201(b). We review de novo a court's taking of judicial notice. *State v. Disney*, 199 Wn. App. 422, 431, 398 P.3d 1218 (2017).

---

[8] Earl incorrectly asserts that the superior court found that appeal was the "only" remedy. Br. of Appellant at 45. Instead, the superior court found that appeal was "the appropriate remedy." CP at 605.

Here, without deciding error, even if the superior court erred in taking judicial notice of Judge Brosey's preparation and attention to detail, any error does not compel reversal. Judge Brosey entered the 1/6/17 order approving the guardian's 90 day reports Although the superior court noted Judge Brosey's attention to detail, the court reviewed de novo Earl's motion to revise the court commissioner's order denying his CR 60(b) motion. And the superior court denied Earl's motion to revise and vacate the 1/6/17 order because it found that Earl had adequate notice of the January 6 hearing and that the superior court had subject matter jurisdiction over Cheryl's trust. Thus, the superior court's judicial notice finding relating to Judge Brosey did not bear on the court's order on revision. Earl fails to show any error would compel reversal.

C.    APPELLATE ATTORNEY FEES

Earl and Anchor Guardianship both request reasonable attorney fees on appeal under RAP 18.1 and RCW 11.96A.150(1). We deny both requests.

RAP 18.1(a) allows a party to recover reasonable attorney fees and costs on appeal if applicable law grants the right to recover attorney fees and costs. RCW 11.96A.150 provides courts broad discretion to award attorney fees "'in such a manner as the court determines to be equitable' in 'all proceedings governed by this title.'" *Sloans v. Berry*, 189 Wn. App. 368, 379, 358 P.3d 426 (2015) (quoting RCW 11.96A.150). In awarding costs, we may consider "any and all factors that [we] deem[] to be relevant and appropriate." RCW 11.96A.150(1).

Earl appeals from the order on revision. However, he directs very little argument to the propriety of the order subject to this appeal. Instead, Earl improperly raises numerous issues that were not before the superior court, such as the accuracy of the guardianship inventory and the

proposed budget filed on December 2. He also repeatedly and improperly challenges the underlying 1/6/17 order. And he repeatedly attempts to vindicate the rights of others, including Cheryl. We deny Earl's request for attorney fees on appeal. And based on the facts of the case, we also deny Anchor Guardianship's request for attorney fees on appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Cruser, J.