**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| BRYAN MICHAEL ANEWEER, | No. 54287-1-II |
| Respondent, | |
| v. | |
| AMBER MAE SMITHLIN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Amber Mae Smithlin appeals the trial court's order denying her CR 60(b)(1) motion to vacate final parenting plan and child support orders due to irregularities in the proceedings. Smithlin fails to establish that the trial court abused its discretion. Accordingly, we affirm the order denying Smithlin's motion to vacate.

FACTS

I. 2016 PARENTING PLAN AND PRELIMINARY PROCEEDINGS

Smithlin and Bryan Aneweer are NA's parents. Under a 2016 parenting plan, Smithlin was NA's primary parent, and Aneweer had every-other weekend visitation.

On August 6, 2018, Smithlin was involved in a vehicle accident in which she struck another vehicle and killed three people. NA, who was five years old at the time, was seriously injured in the accident and was hospitalized. Smithlin was arrested and charged with vehicular homicide. Child Protective Services placed NA with Aneweer.

On August 10, Aneweer filed a "Petition to Change a Parenting Plan, Residential Schedule or Custody Order" based on Smithlin's arrest. Aneweer also filed a proposed parenting plan that prohibited contact between Smithlin and NA based on Smithlin's neglect, emotional or physical problems, substance abuse, and arrest.

That same day, the trial court issued an "Order Setting Case Schedule," a "Summons: Notice about Changing Parenting Plan, Residential Schedule or Custody Order," and an "Immediate Restraining Order (Ex Parte) and Hearing Notice." The Order Setting Case Schedule stated that the trial was set for February 21, 2019. The Summons advised Smithlin that if she did not serve her response to the motion on Aneweer or file a notice of appearance within 20 days of service of the summons, "[n]o one has to notify [her] about other hearings in this case, and . . . [t]he court may approve the requests in the Petition without hearing [her] side (called a default judgment)." Clerk's Papers (CP) at 16 (emphasis omitted). Smithlin never responded to the petition.

A deputy sheriff served Smithlin in jail. The return of service stated that Smithlin had been served with the following documents: (1) Immediate Restraining Order (Ex Parte) and Hearing Notice, (2) Summons: Notice about Changing Parenting Plan, Residential Schedule or Custody Order, (3) Petition to Change a Parenting Plan, Residential Schedule or Custody Order, (4) Motion for Adequate Cause Decision, and (5) Aneweer's proposed parenting plan. The return of service did not state that Smithlin was served with the August 10, 2018 Order Setting Case Schedule.

On September 10, Aneweer appeared for the adequate cause hearing. Smithlin did not appear. The trial court found adequate cause to hold a full hearing or trial on the motion to change the parenting plan and entered a "Temporary Family Law Order" designating Aneweer as NA's

"custodial parent." *Id.* at 65. The trial court did not reissue the restraining order and allowed Smithlin to have telephone contact with NA once a week if it could be arranged by the jail.

On January 29, 2019, the trial court held a status conference and entered an order scheduling the trial for February 21. Aneweer appeared at this hearing, but Smithlin, who was still incarcerated, did not.

On February 21, Aneweer appeared for trial. Smithlin did not appear. The trial court continued the trial date to accommodate Smithlin's criminal case. A new Order Setting Case Schedule stated that the trial was set for May 28. The new Order Setting Case Schedule included a notation stating that the court had copied the order to Smithlin "via mail." *Id.* at 82.

## II. MAY 28, 2019 TRIAL AND RESULTING ORDERS

Aneweer appeared for the May 28 trial; Smithlin did not appear. The report of proceedings from the trial is not part of the appellate record.

In the "Final Order and Findings on Petition to Change a Parenting Plan, Residential Schedule or Custody Order" (Final Order), the trial court noted that it had held an "uncontested court hearing or trial" on May 28, and that Smithlin did not appear because she was incarcerated. CP at 120. The Final Order did not, however, state that it was a "default" order.

In the Final Order, the trial court "approve[d] a major change to the parenting/custody order" because "[t]he requested change is in the [child's] best interest," there had been a substantial change in the child's or the non-petitioning parent's situation, and the child's "current living situation is harmful to [his] physical, mental, or emotional health" to the extent "[i]t would be better for the [child] to change the parenting/custody order." *Id.* at 123-24. The court described how the situation had changed as follows:

3

> Petitioner alleges as follows: Mother was sentenced to 13 years + 2 [months] for driving under the influence which resulted in the death of 3 people & serious physical injury to child who had surgeries and continues to attend counseling. Mother has a history of substance abuse and alcohol issues which resulted in 3 other children being removed from her care. Petitioner [(sic)] has mental health history which includes hearing voices. Mother has had no contact since August 6, 2018.

*Id.* at 123.

The Final Order also stated that Smithlin's parenting time and participation was limited for reasons stated in the new parenting plan and found that Smithlin was "currently incarcerated." *Id.* at 124. The order further stated that there was no protection order requested and that any request for a restraining order had been withdrawn. A notation on the Final Order states that the court copied "both parties via mail." *Id.* at 120.

The trial court also entered a new parenting plan. The new parenting plan placed limitations on Smithlin under former RCW 26.09.191 (2017)[1] based on neglect and several other factors that could be detrimental to the child's best interests, including the fact Smithlin was now serving a lengthy prison sentence. The order required that Smithlin have no contact with NA. The new parenting plan noted that Smithlin had not appeared, but it did not state that it was a "default" order.

---

[1] Former RCW 26.09.191 establishes when a parenting plan can limit a parent's decision-making ability or residential time based on factors such as a parent's willful abandonment, abuse, history of domestic violence or sex offenses, or other factors that could adversely affect the child's best interests.

## III. SMITHLIN'S MOTION TO VACATE

### A. MOTION TO VACATE AND MEMORANDUM OF LAW

Approximately three months later, Smithlin moved to vacate the May 28 orders pursuant to CR 60(b)(1), (6), and (11), and CR 55(c).[2] In a supporting declaration, Smithlin stated that she had never been served with the August 10, 2018 Order Setting Case Schedule, the September 10, 2018 temporary order, the order granting adequate cause, the February 21, 2019 Order Setting Case Schedule, or any other notice of the May 28, 2019 trial date. She further asserted that the trial court made no best interest of the child findings; that the trial court's decision was "a 'default'" decision; and that "this hearing was not on the record, and no testimony was taken." *Id.* at 136. And she stated that because it was possible that she could be released from prison by the time NA was 15 years old, she did not believe it was in NA's best interest to have no contact with her. Other than her references to CR 55 and CR 60, Smithlin did not cite to any legal authority in either the motion to vacate or her supporting declaration.

More than a month later, and two days before the motion hearing, Smithlin filed a second declaration and a memorandum of law. In her memorandum of law, she argued that her lack of notice of the original or actual trial dates violated her due process rights.

She also asserted that the trial court had signed the May 28 orders "off the record" and "without conducting any independent analysis of what is in the child's best interest." *Id.* at 157. Smithlin further contended that the May 28 orders were "tantamount to a default" because the trial court did not take any evidence and "merely entered orders that were substantially similar to the proposed parenting plan filed by the father." *Id.* at 159. And, citing *In re Marriage of Murray*, 28

---

[2] CR 55(c) addresses motions to set aside default orders or judgments.

Wn. App. 187, 189, 622 P.2d 1288 (1981),[3] she also asserted that the trial court failed to consider

the factors in RCW 26.09.187(3)[4] in reaching its decision.

B. MOTION HEARING

At the motion hearing,[5] Smithlin's counsel argued that because Smithlin was not served

with the August 10, 2018 Order Setting Case Schedule, Smithlin had no "meaningful" notice of

any pending court dates, "most importantly the trial." Verbatim Report of Proceedings (VRP) at

2-3. Counsel admitted, however, that the requirement that Smithlin be served with the Order

Setting Case Schedule was rule-based and not constitutional, that Smithlin had notice of the action,

and that she did not appear in the action at any time. Counsel did not, however, identify what rule

she was referring to.

The trial court inquired as to whether "a default could have been taken." *Id.* at 3. Smithlin's

counsel agreed that a default could have been taken, but she asserted that this was not what

happened. The trial court stated that if Smithlin had responded to the petition in some way and

then not appeared for trial because she did not receive a copy of the scheduling order, Smithlin's

notice argument "would make sense." *Id.* at 4. But the court commented that "regardless of whether

a default was taken or not," it was "struggling with the fact that [Smithlin] never appeared" despite

---

[3] The court in *Murray* held that the trial court must consider the statutory factors when making a child custody determination and could not rely solely on the "tender years doctrine." 28 Wn. App. at 189-91.

[4] RCW 26.09.187(3) sets out seven factors that the trial court "shall" consider when determining the child's residential provisions. These factors can be overridden by limitations imposed under former RCW 26.09.191.

[5] Aneweer represented himself at this hearing.

having notice of the proceedings. *Id.* The court then concluded that Smithlin's notice of the petition and her "failure to appear in any way in the lawsuit" precluded any due process argument. *Id.* at 5.

The court then commented that counsel's analogizing the May 28 orders to "a default" was a "fair" characterization because the court took no "testimony" at trial. *Id.* But the court asked Smithlin's counsel why she thought "there was something then deficient" about a default decision when the court could have issued a "default" order any time after 20 days since Smithlin did not respond to the petition. *Id.* Smithlin's counsel responded that the court's treating the matter like a default order was a "procedural irregularit[y]" because no motion for default was filed and there was no order of default. *Id.* at 6. Counsel further stated, however, that she thought "the bigger issue is the failure to apply the statute as it relates to any testimony being taken."[6] *Id.*

The trial court responded that counsel was "playing both sides of the street" because in a default action there would not be any testimony. *Id.* When the trial court asked counsel to clarify whether she was arguing that this was an improper default order or whether there were other irregularities in the proceedings, counsel responded that her argument was that the trial court had entered an improper default order.

The trial court then asked counsel what notice of a default proceeding was required when a party has not appeared in a matter and how treating the proceeding as a default proceeding was insufficient. Counsel responded that although Smithlin would not be entitled to notice of a default proceeding because she had not appeared, the trial court would still have had to consider the default factors to determine whether a default was appropriate. Counsel commented that "at least nearly

---

[6] Counsel did not specify what statute she was referring to.

from what [she could] tell on the record" there was no such consideration. *Id.* at 7. Counsel admitted that she did not know if the result would have been different had the trial court considered the default factors, but she argued that the trial court could not cure this error by considering these factors at the CR 60 motion hearing.

After discussing what prejudice Smithlin was alleging, Smithlin's counsel argued that there was no evidence in the record establishing that the final orders were default orders because there was no evidence that there was a motion for default, an order of default, or any findings regarding default. Smithlin asserted that if there was no default order, the trial court erred by not taking any testimony or allowing cross examination at trial. After clarifying with counsel that the only relief available would be some form of visitation because of Smithlin's continued incarceration, the trial court took the issue under advisement.

C. ORDER DENYING MOTION TO VACATE

The trial court issued the following order denying the motion to vacate:

> **THIS MATTER** came before the Court on Respondent Amber Mae Smithlin's motion to vacate the parenting plan entered on May 28, 2019. It should be noted that the motion contained no legal argument. There was a memorandum of law filed on November 13, 2019, only two days before the hearing. When reviewing this memorandum of law, it is clear that it was not in reply to the opposition filed by [Aneweer]. As such, this Court is under no obligation to consider it. But even if it was considered, [Smithlin's] arguments fail.
>
> First, regarding the claim of lack of due process, Ms. Smithlin was served with the petition and did not respond. She had adequate notice of the proceedings for due process purposes. Her allegation that she did not receive the case scheduling order as part of the service on her, even if true, is not a constitutional infirmity. Not getting the case scheduling order does not excuse her failing to appear in any way in the litigation. The second primary argument, that the court failed to take testimony and failed to follow RCW 26.09.187, including making findings regarding the statutory factors, also fails. While [Smithlin] cites to *Murray v. Murray,* 28 Wn. App. 187, 191 (1981), *Murray* involved a case in which testimony was presented by both sides at trial. By contrast, here, there was no trial because

8

the mother failed to respond to the lawsuit or appear in any way. Moreover, RCW 26.09.181[(1)](d)[7] provides that "[a] party who files a proposed parenting plan in compliance with this section may move the court for an order of default adopting that party's parenting plan if the other party has failed to file a proposed parenting plan as required in this section." While [Smithlin] points out that a specific motion for default was not made prior to trial, [Smithlin's] failure to appear for trial creates a default situation.

The Court does not believe it erred when it entered the parenting plan on May 28, 2019. But even assuming, arguendo, that the Court did err, such error would have been an error of law. A CR 60 motion, however, is not the proper procedural vehicle for this type of error. "Errors of law may not be corrected by a motion pursuant to CR 60(b), but must be raised on appeal." *In re Marriage of Tang*, 57 Wn. App. 648, 654, 789 P.2d 118, 122 (1990).

CP at 164-65.

Smithlin appeals the trial court's order denying her CR 60(b)(1) motion to vacate.

ANALYSIS

Smithlin argues that the trial court abused its discretion in denying her motion to vacate because (1) her lack of notice violated due process, CR 40(a)(1), and Pierce County Local Rule (PCLR) 3; (2) the trial court entered the equivalent of a default order without first finding that Smithlin was in default under CR 55 and failed to "tak[e] any substantive evidence as required by CR 40(a)(5)," Br. of Appellant at 17; and (3) the trial court's orders "exceed[ed] the relief initially plead by [Aneweer]," *id*. Smithlin also argues that several of the trial court's findings in its May 28, 2019 orders were not supported by any evidence because the trial court failed to hear testimony. These arguments either fail or we cannot consider them.

---

[7] RCW 26.09.181(1)(d) provides: "A party who files a proposed parenting plan in compliance with this section may move the court for an order of default adopting that party's parenting plan if the other party has failed to file a proposed parenting plan as required in this section."

I. LEGAL PRINCIPLES

We review a superior court's ruling on a motion to vacate a judgment under CR 60(b) for abuse of discretion. *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 434, 378 P.3d 183 (2016). Our review of a CR 60(b) ruling is limited to the propriety of the denial of relief from judgment, not of the underlying judgment the party sought to vacate. *State v. Gaut*, 111 Wn. App. 875, 881, 46 P.3d 832 (2002) (citing *Bjurstrom v. Campbell*, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980)).

A court abuses its discretion if its decision is "'manifestly unreasonable, based on untenable grounds, or based on untenable reasons.'" *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 821, 225 P.3d 280 (2009) (quoting *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995)). Therefore, we will only overturn the superior court's decision if the decision "'rests on facts unsupported in the record or was reached by applying the wrong legal standard,'" or if the superior court applied the correct legal standard, but "adopt[ed] a view 'that no reasonable person would take.'" *Id.* at 822 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

CR 60(b)(1) provides that the trial court may relieve a party from a final judgment for "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." "Irregularities pursuant to CR 60(b)(1) occur when there is a failure to adhere to some prescribed rule or mode of proceeding, such as when a procedural matter that is necessary for the orderly conduct of trial is omitted or done at an unseasonable time or in an improper manner." *Mosbrucker v. Greenfield Implement, Inc.*, 54 Wn. App. 647, 652, 774 P.2d 1267 (1989). Irregularities "typically involve procedural defects unrelated to the merits" that put the integrity of

the proceedings into question. *Tang*, 57 Wn. App. at 654-65 (citing 4 LEWIS H. ORLAND, WASHINGTON PRACTICE: RULES PRACTICE § 5713, at 543 (3d ed. 1983)).

## II. NOTICE ISSUE

Smithlin argues that the trial court's failure to provide her with the August 10, 2018 and February 21, 2019 Orders Setting Case Schedule were irregularities in obtaining the final judgment because the lack of notice of the trial dates deprived her of due process and violated CR 40(a)(1) and PCLR 3.

The trial court concluded that the lack of service of the scheduling orders did not constitute a due process violation because Smithlin was served with the pleadings, she had an opportunity to respond, and she failed to respond to the pleadings. Smithlin contends that without service of the scheduling orders, she had no actual notice of when the trial would occur. But Smithlin cites no legal authority establishing that additional notice is constitutionally required when a party has been served with the pleadings and had never appeared in the case. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Accordingly, Smithlin fails to show that the trial court abused its discretion on this basis.

Smithlin also asserts that the lack of notice of the hearing dates violated CR 40[8] and PCLR 3,[9] and that these rule violations are irregularities in the proceedings that supported her CR 60 motion. But Smithlin did not cite these rules in her CR 60 motion, in her memorandum of law, or at the CR 60 motion hearing, and a trial court does not abuse its discretion if it fails to address an argument that was not raised.[10] *See Wilson & Son Ranch, LLC v. Hintz*, 162 Wn. App. 297, 303,

---

[8] CR 40 addresses the assignment of cases. CR 40(a)(1) allows either party to bring a case to trial after serving notice of trial on the other party.

[9] PCLR 3(d) provides in part:

> In every newly initiated family law case or modification proceeding, the petitioner shall serve a copy of the [Order Setting Case Schedule] on the respondent along with the initial pleadings; provided that if the initial pleading is served prior to filing, the petitioner shall within five (5) court days of filing serve the applicable order. . . . When the applicable order is served pursuant to this section, it may be served by regular mail with proof of mailing/service to be filed promptly in the form required by these rules, see PCLR 5.

And PCLR 3(e) provides in part:

> **Amendment of Case Schedule.** The court, either on motion of a party or on its own initiative, may modify any date in the Order Setting Case Schedule for good cause . . . . If an Order Setting Case Schedule is modified . . ., the court shall prepare and file the Order Amending Case Schedule and promptly mail or provide it to the attorneys and self-represented parties.

[10] Furthermore, even if we addressed these arguments, they would fail. First, CR 40 is not relevant because it applies when the parties, not the trial court, set the matter for trial, which is not what occurred here. *Swan v. Landgren*, 6 Wn. App. 713, 716, 495 P.2d 1044 (1972) ("When the court does not directly exercise this power, a party, by making the proper application of the court rules, is provided the procedural means to move the case through the various steps toward ultimate determination.") (citing RCW 4.44.020; CR 40(a)(1), (2), and (5)).

Second, even if Smithlin had previously relied on PCLR 3(d), the failure to serve the August 10, 2018 setting order could not amount to an irregularity in obtaining the judgment or order when the original February 21, 2019 trial date noted in that order was reset for May 18.

And third, Smithlin would not be able to show noncompliance with PCLR 3(e). The February 21, 2019 setting order was an amendment of the case schedule, so PCLR 3(e) applies. PCLR 3(e) does not require service of that order; it merely requires that the order be mailed to the attorneys or self-represented parties, without specifying any particular type of mailing. And the record shows that the February 21, 2019 order was mailed to Smithlin.

253 P.3d 470 (2011) ("[W]e do not consider theories not presented below.") (citing *Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 780, 819 P.2d 370 (1991)).

Accordingly, these arguments fail to show that the trial court abused its discretion when it denied Smithlin's CR 60 motion.

### III. "DEFAULT"

Smithlin next argues that the trial court erred by assuming that "default" would have been granted under CR 55 and that the court was therefore not required to take any evidence before entering the final orders. Smithlin contends the trial court's entry of the final orders without either finding that Smithlin was in default under CR 55 and entering an order of default or, in the absence of a default order, taking evidence was an irregularity in obtaining the final orders. This argument fails.[11]

In its order denying the CR 60 motion, the trial court concluded that although Smithlin had "point[ed] out that a specific motion for default was not made prior to trial," her failure to appear "create[d] a default situation" that allowed the court to adopt Aneweer's proposed parenting plan under RCW 26.09.181(1)(d). CP at 165. RCW 26.09.181(1)(d) provides, "A party who files a proposed parenting plan in compliance with this section may move the court for an order of default adopting that party's parenting plan if the other party has failed to file a proposed parenting plan as required in this section."

Smithlin's argument relies on CR 55. But she does not address or acknowledge RCW 26.09.181(d) or cite any authority demonstrating that the trial court erred in ignoring CR 55.

---

[11] In light of this conclusion, we do not address Smithlin's CR 52 argument.

Because Smithlin does not adequately brief this issue, she fails to show that the trial court abused its discretion in concluding that the final orders were properly issued under RCW 26.09.181(d).

## IV. EXCESS RELIEF

Smithlin also argues that the trial court erred when it entered the final orders without having served Smithlin with a financial declaration or the proposed child support worksheets, thereby "exceeding the relief initially plead by the father." Br. of Appellant at 17. But Smithlin did not make this argument in her CR 60 motion, in her memorandum of law, or at the hearing on the CR 60 motion, and a trial court does not abuse its discretion if it fails to address an argument that was not raised. *See Wilson & Son Ranch, LLC*, 162 Wn. App. at 303 (citing *Doe*, 117 Wn.2d at 780). Accordingly, this argument does not establish that the trial court abused its discretion when it denied her CR 60 motion.

## V. CHALLENGES TO BEST INTEREST FINDINGS AND PARENTAL CONDUCT RESTRICTIONS

Finally, Smithlin also challenges several of the trial court's findings in its May 28, 2019 orders regarding NA's best interests and the parental conduct restrictions imposed on Smithlin. We assume that Smithlin is asserting that the trial court abused its discretion by failing to consider these arguments when considering Smithlin's CR 60 motion.

Smithlin contends that because the trial court did not consider any "substantive testimony" at the trial, there is no evidence supporting any findings and that the trial court failed to consider the statutory factors required when evaluating a child's best interests. Br. of Appellant at 23. Smithlin further argues that the trial court did not apply the rules of evidence, engage in the proper analysis on the record, or apply the correct standard of proof when it considered the parental

conduct restrictions under RCW 26.09.187(3). There are three significant problems with these arguments.

First, we do not have an adequate record to review what evidence the trial court considered or the analysis it may have engaged in because the May 28, 2019 transcript was not designated as part of the record. As the party seeking review, Smithlin has the burden to perfect the record so we can consider all of the evidence relevant to the issues presented. RAP 9.2(b). "An insufficient appellate record precludes review of the alleged errors." *Stiles v. Kearney*, 168 Wn. App. 250, 259, 277 P.3d 9 (2012).

Second, Smithlin is arguing that the trial court committed errors of law, which we do not address under CR 60(b).[12] *Burlingame v. Consolidated Mines and Smelting Co., Ltd.*, 106 Wn.2d 328, 336, 722 P.2d 67 (1986) (CR 60 motions are not a means of correcting errors of law; insufficiency of the evidence is an error of law). And third, we do not consider challenges to the underlying judgment when determining whether the trial court abused its discretion in denying a CR 60 motion. *Gaut*, 111 Wn. App. at 881. Thus, these arguments do not demonstrate that the trial court abused its discretion when it denied the CR 60 motion.

---

[12] We note that Smithlin argues that the trial court misapplied *Tang* in the order denying the CR 60 motion. But Smithlin does not argue that the specific errors we address in this section are not errors of law.

CONCLUSION

Smithlin does not show that the trial court abused its discretion when it denied her CR 60(b)(1) motion to vacate. Accordingly, we affirm the order denying the motion to vacate.[13]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

GLASGOW, J.

---

[13] We note that this decision in no way restrains Smithlin from moving for any appropriate modification to the parenting plan to allow for visitation.