[No. 32029-7-I.    Division One.    August 1, 1994.]

BERYL FERNANDES, *Appellant,* v. CAROL MOCKRIDGE,
ET AL, *Respondents.*

*Michael J. Trickey* and *Appelwick, Trickey & Lukevich,* for appellant.

*Howard R. Bartlett* and *Taylor, Kiefer & Bartlett; Julie M. Schisel* and *Law Offices of Linn & Schisel,* for respondents.

BECKER, J. — Beryl Fernandes sued Christian Richards (her former husband) and Carol Mockridge for an allegedly fraudulent transfer of property. The trial court sent her suit to mandatory arbitration, a decision to which she assigns error. Disappointed in the arbitration award of $5,600, Fernandes sued de novo in superior court. She now appeals the trial court's orders dismissing her claims against the Defendants and awarding them attorney fees.

Because Fernandes did not demonstrate a tenable claim for damages exceeding the threshold at the time the trial court made the determination of arbitrability, we affirm the court's exercise of discretion in making that determination, as well as the order of attorney fees attributable to Fernandes's failure to improve her position at the trial de novo.

Fernandes also assigns error to the trial court's limitation of her pro se direct testimony; issuance of its own findings of fact and conclusions of law; its assessment of the reasonableness of attorney fees pursuant to the dissolution decree and those incurred postarbitration; and dismissal of her claims for lack of proof at the close of her case. Seeing no merit in these contentions and no point in taking additional evidence on appeal, we affirm the judgments.

## FACTS

Richards and Fernandes separated in February of 1988 after 19 years of marriage. Richards began dating Carol Mockridge in the spring of 1990.

As part of the property distribution plan entered in its decree of dissolution, the court awarded the couple's vacation home in Quilcene, Washington, to Richards, subject to a lien in favor of Fernandes in the amount of three-eighths of the net sale proceeds. The decree authorized a number of disbursements from the proceeds toward community debts. For the purposes of property distribution, the decree assigned to the Quilcene property a fair market value of $115,000, with a net value of $80,000 after deducting sales costs and capital gains taxes.

Prior to the dissolution hearing, Richards and Fernandes had tried to sell the property by listing it with a real estate broker for $149,500. In August 1990, Mockridge made an offer to buy Fernandes's one-half interest for $61,500. Fernandes rejected this offer. The broker later recommended they lower the price to between $112,000 and $115,000. Richards, who was managing the property until the time of trial, lowered it to $139,500 on November 7, 1990. The property remained for sale at this price for 3 months, despite being shown to numerous people. In March 1991, Richards sold the Quilcene property to Mockridge for $102,500. After deduction of capital gains tax, sales costs, and certain repair costs, the net proceeds were $71,560. Fernandes's share amounted to just under $27,000. The court-ordered disbursements from her share of the proceeds left Fernandes with no

cash distribution from the sale. In fact, she still had outstanding debts.

Fernandes filed suit against the Defendants in June 1991, alleging fraud, misrepresentation, breach of fiduciary duty and conspiracy to defraud and seeking equitable damages and damages for emotional distress. The Defendants filed for mandatory arbitration. Fernandes objected, asserting that her claim exceeded the maximum arbitrable amount of $35,000. The court allowed arbitration after reviewing memoranda from the parties and holding a status conference.

The arbitrator dismissed Mockridge and awarded Fernandes $5,600 against Richards. Under MAR 7.1, as the aggrieved party, Fernandes requested a trial de novo. Prior to trial, she successfully resisted a motion for summary judgment.

At the bench trial Fernandes represented herself. At the conclusion of Fernandes's case, the court granted the Defendants' motion to dismiss all of her claims. The court awarded prearbitration attorney fees to Richards under the dissolution decree and awarded attorney fees to the Defendants for the postarbitration period.

### Transfer to Mandatory Arbitration

■ Fernandes assigns error to the court's decision to transfer her case to mandatory arbitration over her objection. Her argument that the transfer violated her right to a jury trial has already been rejected in *Christie-Lambert Van & Storage Co. v. McLeod*, 39 Wn. App. 298, 306, 693 P.2d 161 (1984). Similarly without merit is her contention that the transfer was a violation of due process. She had ample opportunity to be heard.

She also contends King County Local Mandatory Arbitration Rule (LMAR) 2.1 required the court to accept at face value her claim that the case exceeded $35,000 in value. LMAR 2.1(b) reads in relevant part that "[i]f a party asserts that its claim exceeds the maximum amount authorized by statute or seeks relief other than a money judgment, the case is not subject to arbitration except by stipulation."

■ Local courts may not pass rules inconsistent with the general civil rules. CR 83. The test for inconsistency is whether the two rules can be reconciled and both given effect. *King Cy. v. Williamson*, 66 Wn. App. 10, 13, 830 P.2d 392 (1992).

■ MAR 2.2, a general rule, provides the trial court with discretion to determine whether a case is actually subject to arbitration under RCW 7.06.020. The judicial council has said that MAR 2.2 "gives the judge authority to deal with maneuvers designed to keep a case out of the arbitration system". 4A Lewis H. Orland & Karl B. Tegland, Wash. Prac., *Rules Practice* § 5821, at 11 (4th ed. 1990). RCW 7.06, authorizing mandatory arbitration in certain civil cases, is intended primarily to alleviate court congestion and reduce delay in hearing cases. *Christie-Lambert Van*, at 302. To give to LMAR 2.1(b) the effect suggested by Fernandes would defeat this intent by forcing the unnecessary and premature commitment of court resources. LMAR 2.1 must function within the larger purpose of MAR 2.2, which is meant to prevent parties from sidestepping mandatory arbitration by exaggerating the value of their claims.

To the extent that LMAR 2.1 allows the claimant to frustrate a transfer to arbitration by an unsupported assertion of value, it cannot be reconciled with MAR 2.2(a) which allows the court to "determine whether a case is actually subject to arbitration". Notwithstanding any inconsistency presented by King County's local rule, MAR 2.2 vests discretion in the trial court judge to look behind the face value of the claim and to order a transfer to arbitration where the claim of value exceeding the statutory maximum lacks a foundation.

We review the trial court's determination of arbitrability for abuse of discretion, which occurs when its "exercise of discretion is manifestly unreasonable or based on untenable grounds." *Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 636, 865 P.2d 527 (1993).

The Defendants argue that the arbitration award of $5,600 retrospectively justifies the court's decision to send

the case to arbitration because it proves the value of the claim never approached the $35,000 ceiling. The real issue, however, is whether the court had a sufficient basis for estimating the value of the claim at the point when the decision was made to transfer to arbitration. That determination imposed a financial risk upon the claimant with respect to all subsequent proceedings, and must be justified without benefit of hindsight.

The statute contemplates, indeed intends, that a claimant who goes to trial in superior court after a disappointing arbitration award faces greater financial risk than a claimant who is allowed to go to trial without passing through arbitration. Imposing the risk of having to pay the other side's fees if one's position is not bettered at trial serves the purpose of discouraging meritless appeals from arbitration as well as preserving superior court resources for trial of larger claims. However, the governing statute and rules are not intended to divert from superior court, or burden with increased risk, those claimants whose legitimate damage claims have a reasonable possibility of exceeding the threshold amount.

■ The claimant has the initial burden to apprise the trial court of the claimant's theory of proof of damage by quantifying or otherwise substantiating the damage claim. The mere assertion of a claim for general damages in an amount to be proved at trial is insufficient to meet this burden.

■ The trial court, when apprised of the claimant's damage theory, may then exercise its discretion in determining whether the damage claim has a reasonable possibility of exceeding the threshold amount. The court's discretion to estimate damages must be wide in light of the statutory purposes, and may properly be exercised on the basis of approximations and probabilities.[1] But the discretion is not unfettered. Where the claimant substantiates an assertion that damages exceeding $35,000 are possible, an oral ruling

---

[1] We do not, however, hold that the court has discretion to forecast the outcome as to liability, or to factor such a forecast into its estimate of the range of possible damages.

on the record or a written order will normally be necessary to demonstrate the basis for a decision to transfer to arbitration.

Here, the record amply demonstrates that Fernandes's claim for damages, insofar as it was based on the value of the Quilcene property, could not tenably exceed the $35,000 threshold. Fernandes argued that her recovery from the Quilcene property would have exceeded $50,000 but for the alleged fraud of the Defendants in fixing the price of the property at the unreasonably low figure of $102,500. Fernandes relied on a comment by the judge who entered the dissolution decree to the effect that Fernandes could expect to "come away with about $40,000 or so in hard cash" after the sale. In fact, she received no cash. However, the reason she received no cash was that the decree and a subsequent court order required her to pay numerous debts out of her net share from the sale amounting to approximately $27,000. She did, on balance if not in hard cash, receive her share of the $102,500 sale price.

In any event, the difference between the actual price of $102,500 and the alleged actual value of $149,500 is $47,000. Fernandes, in a best case scenario, would be entitled to three-eighths of the difference, or $17,625 — well under the $35,000 threshold. All this was apparent from the record presented to the court at the time of the decision to transfer to arbitration.

Fernandes's suit also claimed damages for emotional distress, a highly variable damage component. Emotional distress damages for intentional torts relating to property transactions are recoverable. Neither objective manifestations nor severe distress are required in the proof. *Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 484, 805 P.2d 800 (1991). Fernandes did refer to the emotional distress claim in her memorandum in opposition to arbitration. However, she stated its value only as "an amount to be proven at trial". She did not estimate the value, nor did she apprise the trial court of any facts, evidence or argument that she planned to introduce at trial in support of her emotional distress claim. Thus she did not meet her initial burden of

214

demonstrating that it could amount to enough (in this case, more than $17,000) to bring her potential total to $35,000 when added to the property claim.

Accordingly, the trial court did not abuse its discretion in deciding to transfer the case to arbitration and we affirm the trial court's judgments.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

KENNEDY and AGID, JJ., concur.

Review denied at 126 Wn.2d 1005 (1995).