FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 NOV -5 AM 9: 42

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DENISE ROYSTON; JAN and DAVID ）
KIRCHER (a marital community)[†]; ）    No. 77042-0-I
DENISE MCALLISTER; and ERIC ）
STONE CAMPBELL and DENISE ）    DIVISION ONE
CAMPBELL (a marital community), ）
    ）    UNPUBLISHED OPINION
    Respondents, ）
    ）
    v.    ）
    ）
    ）
CHARLES D. CARMAN, JR., and ）
CONNIE COONS, ）
    Appellants. ）    FILED: November 5, 2018
_____）

BECKER, J. — In this landlord-tenant dispute, the trial court properly declined reconsideration of an order denying the landlord's request to arbitrate.

The record establishes the following. Appellant Charles Carman owns a parcel of land in rural Bellingham. In the spring of 2013, Carman entered into rental agreements with the respondents, allowing them to live in housing units on his property (or, in the case of one tenant, allowing her to park a recreational vehicle on the property). The tenants experienced poor living conditions. The many problems with their units included exposed electrical wiring, no smoke detectors, and a poorly functioning septic system. The tenants reported these problems to Carman but he did not fix them.

_____

[†] Since the filing of this action, Jan and David Kircher have dissolved their marriage. However, their joint claims under their lease still remain.

County inspectors visited the property in July 2013 after receiving complaints from the tenants. The inspection revealed various code violations. The housing units lacked proper permitting, and electrical problems and other hazards rendered them unsafe. The county notified Carman of the violations and instructed him to take corrective action. The tenants were instructed to leave the units. All did so by August 2013.

The tenants filed suit against Carman and his property manager, appellant Connie Coons, in November 2013. They claimed violations of the Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW, and the common law implied warranty of habitability. They alleged that their units lacked rental value and requested compensation for rent and deposits paid to Carman and for relocation costs. In a joint answer filed pro se, Carman and Coons requested dismissal of the suit.

In May 2015, the tenants filed a motion seeking summary judgment on the claims they raised under RCW 59.18.085(3). That statute requires a landlord to compensate tenants who are displaced after a landlord is notified, by a government agency, "that a dwelling will be condemned or will be unlawful to occupy" and the landlord knew or should have known about the unlawful conditions. RCW 59.18.085(3)(a). The tenants' motion also sought judgment on one plaintiff's claim under the implied warranty of habitability. Although the motion stated it was for "partial" summary judgment, the tenants' appellate brief makes clear that the motion was intended to resolve the suit. Claims raised in the complaint but not addressed by the motion were alternative theories of

2

liability. The tenants supported their motion with declarations describing their living conditions on Carman's property, copies of their lease agreements, copies of the county notices, and documentation showing that Carman had not responded to interrogatory requests.

A hearing on the motion was originally set for June 2015. It was continued to November 13, 2015, per requests by the defendants.

During the hearing on November 13, 2015, Carman, appearing pro se, disputed the tenants' claims. But he had submitted no admissible evidence tending to disprove the tenants' evidence about the problems with their units and the county's inspection. The court told Carman that this lack of proof was fatal to his defense:

> You make claims, and you make your own statements, but you haven't provided anything in terms of a documentation by virtue of affidavit or other sort of, as the Plaintiff has provided to the court, documentation from the county showing that your properties are in compliance, or that they were in compliance at the time. I have nothing to tell me anything other than what they've said, which is pretty well-documented that the county has said each of these four places are illegal and couldn't be rented, and they have filed those notices, and they have told the people they had to get out. That's the real issue in this case, did that happen or didn't it, and unless you can show me that it didn't, I have to accept that.

Carman suggested to the judge that health problems prevented him from adequately representing himself. He said that he was scheduled to undergo a competency evaluation in a criminal case against him. The judge acknowledged having medical records about Carman showing a past diagnosis of post-traumatic stress disorder. The judge told Carman that these records were inadequate to show that he could not proceed:

3

> [A]ll the medical records that you've given me do not say in any way, any way that I can consider to be a true medical opinion that you are incompetent and unable to handle your affairs here, and when I look at the documents you provided, and the things that you've done in this case, I would have to find that that makes perfect sense, because you've been able to respond to things except when the pressure was on, and you had to, and you're facing, having a ruling against you as you've had today.

The court told Carman, "If you have a competent medical opinion that you're incompetent and can't handle this case, then you bring it back to me. In the meantime, I don't have enough."

The hearing also included discussion of a request for mandatory arbitration by Carman. Mandatory arbitration procedure is governed by local court rule. A party who wishes to arbitrate under chapter 7.06 RCW, Mandatory Arbitration of Civil Actions, must file with the clerk a note for the motion docket, a demand for arbitration, and a proposed order on a prescribed form.

> **(a) Demand for Arbitration.** In every civil case, when any party has determined that the case is ready for trial and that the case is subject to mandatory arbitration, such party shall file with the clerk its Note for Motion Docket and Demand for Arbitration, setting the matter on the Motion Docket not earlier than the next motion calendar after the expiration of 14 days from the date such Demand is filed. At the same time the party demanding arbitration shall submit its proposed order on the form prescribed by the court. Cases shall be transferred to arbitration only by court order.

Whatcom County Superior Court Local Mandatory Arbitration Rules (WCMAR) 2.1(a).

The transcript of the hearing from November 13, 2015, indicates that Carman filed a "Declaration in Support for Demand for Arbitration" in September 2015. This document is not in the appellate record. It appears that Carman also filed a note for motion docket setting a "Demand for Arbitration" for hearing on

November 13, 2015. This document is attached to Carman's reply brief but it is not in the appellate record.

The judge declined to rule on Carman's request for arbitration, finding that he had not followed the proper procedure. Carman protested that he had paid a filing fee. The judge maintained his ruling:

> There is a standard form if you want to seek arbitration under the county's mandatory arbitration rules that you file so that it can be brought before a judge to determine whether it should happen. I don't see that anywhere in here, and I don't see even a formal motion or request form you served upon [plaintiffs' counsel] with proper notice to say I want this case to be arbitrated, and I looked at the rental agreements, and I didn't see any arbitration clause in the rental agreements. So if you're going to ask for arbitration, it has to be either under the Landlord/Tenant Act or under the court's mandatory arbitration rules. So I don't see a motion to that effect in any of the things you filed.

At the end of the hearing, the court entered an order granting summary judgment as requested by the tenants. The court determined the tenants were entitled to compensation from Carman and reasonable attorney fees and costs. On December 18, 2015, the court entered separate orders awarding judgment in favor of each plaintiff. The court stayed enforcement of these orders until February 1, 2016, "pending Defendant's submission of a competency examination or any other documents related to this case."

On November 19, 2015, Carman filed a new demand for arbitration and note for motion docket.

On January 12, 2016, Carman moved the court to review additional documents concerning his competency. The motion was heard on January 29, 2016. At this time, Carman had been evaluated for competency in connection with the criminal prosecution, but the report of the evaluation was not yet

available. At the outset of the hearing, the judge announced that he had decided to send the case to arbitration. The judge told the parties that since the last hearing, he had learned that Carman did pay a filing fee in connection with his initial request for arbitration. The judge reasoned that this fact evidenced a good faith effort by Carman to comply with the procedures for obtaining arbitration under the court rule, and it would serve the interests of justice to let the arbitrator consider evidence bearing on Carman's competency,

> because Mr. Carman did, made what I think is a good faith effort to perfect his arbitration rights under this cause number and did not have counsel, and if, in fact, his condition is as he represents it to the Court, he would probably make a pretty good case that he was incapable of understanding what had been done wrong, or not getting his arbitration matter before the court in the proper way, and since he did, in fact, pay the fee which indicates to me that he had that intent at the time, I believe that this Court ought to in the interests of justice allow this matter to be transferred over into arbitration subject to the rules of arbitration, and Mr. Carman will be expected to participate in that arbitration unless he can present to the arbitrator the kind of proof he has not provided to this Court, which is that he's incapable medically or psychologically of participating. I haven't seen it yet. I don't see any evidence of that yet. Maybe the evaluation that is pending will give us that information. I don't know.

> The reality of it is until we have something that shows us Mr. Carman's inability to participate, I have to -- I think I'm obligated to err on the side of allowing him to have the arbitration, setting aside for the time being the summary judgment order with the full understanding that if it turns out that the evaluation shows Mr. Carman is competent, and the matter goes to arbitration, that should be something that can be considered by the arbitrator.

> But I'm going to set it aside for now, and we're going to see what happens to this thing. I'm going to direct you to have this matter transferred to mandatory arbitration. Mr. Carman can present to the arbitrator whatever information he has about his condition, if he has anything of substance, and the arbitrator can decide whether they want to proceed under those circumstances or not. If they choose not to, and it comes back to this Court, then

6

we're probably going to be upholding the Court's decision on the summary judgment.

But I want to give Mr. Carman that last opportunity to comply with the arbitration provision to get his chance to have his case arbitrated, and so that's what I'm going to do.

By written order dated March 4, 2016, the court concluded that Carman's request for arbitration was properly before the Court when first presented because he had paid the appropriate filing fee. The order stated, "Where a party claims his disability impairs his capacity to participate in and respond to a case, the Court considers itself obligated to protect the rights of the party who claims to be disabled, even without competent medical evidence or clear functional indications to support that claim." Having concluded that the case was subject to mandatory arbitration, the court stayed the judgments entered on December 18, 2015, and ordered the matter transferred to arbitration under WCMAR 2.1.

The tenants moved for reconsideration. They argued in part that the court's order of March 4, 2016, was an "irregularity in the proceedings" and unfair surprise, warranting reconsideration under CR 59(a)(1) and (3). Their motion stated, "The Court decided on January 29 to approve Defendant Carman's previous Demand for Mandatory Arbitration without any motion being made for that purpose, without any other advance notice to the parties, and therefore without time for Plaintiffs to prepare a thorough response." The motion asserted that the ruling was untenable in the absence of proof that Carman was incompetent or that he properly requested arbitration.

During a hearing on March 18, 2016, the judge stated that after ordering arbitration on March 4, 2016, he had received documents from plaintiffs' counsel

7

showing that Carman had pursued an eviction action against a different tenant during the same period he was claiming incompetency in this suit. The judge said that based on this information, he doubted that it was appropriate to rely on Carman's representations of incapacity. The judge said that he found persuasive at least one argument raised in the tenants' motion for reconsideration, namely, "that the Court made this decision sua sponte, and rather than reversing should have perhaps given [plaintiffs' counsel] the opportunity to argue whether arbitration is appropriate in this case or not." The judge gave Carman a deadline, April 15, to produce evidence that he was "incapable of understanding and proceeding."

The parties appeared before the court again on April 15, 2016. Earlier that week, the tenants had filed a copy of Carman's competency report from the criminal case. That report was completed on March 24, 2016. The report concluded, as to the criminal case, that Carman possessed "the capacity to understand the nature of the proceedings against him and the capacity to assist in his own defense." This conclusion cast further doubt on Carman's claim of incompetency in the present matter. The judge determined that Carman's incompetency remained unproven and therefore did not excuse Carman's noncompliance with the rules for requesting arbitration. At the end of the hearing, the court entered a written order acknowledging that granting Carman's demand for arbitration had been an error. The order of April 15, 2016, vacated the previous order to arbitrate and it reinstated the summary judgment orders of November 13, 2015, and December 18, 2015.

Carman moved for reconsideration. A hearing occurred on May 20, 2016. The appellate record does not contain a transcript of this hearing. According to the minutes, Carman "suffered a medical emergency" during the hearing and the court recessed. According to a letter from plaintiffs' counsel to Carman, Carman's medical emergency resulted in the hearing ending without the court making any decision on his motion. Counsel for plaintiffs advised Carman that he was required to re-note his motion for hearing within 30 days under CR 59(b).

Carman did not re-note the hearing. Nearly a year later, on May 11, 2017, the tenants filed a supplemental motion to deny reconsideration. They argued that Carman had failed to timely prosecute his motion. The court agreed to deny reconsideration after a hearing on May 26, 2017. The court ordered Carman to pay additional attorney fees and costs.

Carman appeals from the May 26, 2017, order denying reconsideration. He asks us to reinstate the order of March 4, 2016, sending the case to arbitration.

We review a trial court's ruling on reconsideration for an abuse of discretion, which occurs when the exercise of discretion is manifestly unreasonable or based on untenable grounds. Wagner Dev., Inc. v. Fidelity & Deposit Co. of Maryland, 95 Wn. App. 896, 906, 977 P.2d 639, review denied, 139 Wn.2d 1005, 989 P.2d 1139 (1999). To the extent the challenged order is viewed as a determination against arbitrability, the same standard of review applies. Fernandes v. Mockridge, 75 Wn. App. 207, 211, 877 P.2d 719 (1994), review denied, 126 Wn.2d 1005, 891 P.2d 38 (1995).

The trial court reasonably concluded that Carman did not establish a basis for reconsideration under CR 59. Carman makes no meaningful effort to demonstrate error in the decision to deny reconsideration. At no point below did he establish the existence of a genuine issue of material fact that would preclude summary judgment on the tenants' claims concerning the unlawful conditions on his property. He argues only that the court erred in vacating its earlier order to send the case to arbitration.

Carman asserts that there is a general presumption in favor of arbitrability. He cites a section of the Uniform Arbitration Act, RCW 7.04A.070, and case law concerning contractual arbitration. The statute and case law presuppose the existence of an agreement to arbitrate. Here, it is undisputed that the parties had no agreement to arbitrate. The question was whether arbitration was proper under the requirements of a local court rule implementing chapter 7.06 RCW. Carman did not comply with those requirements. Specifically, he did not make a formal demand for arbitration accompanied by a proposed order as required by WCMAR 2.1(a).

Carman suggests that the trial court lost or destroyed paperwork that he filed in connection with his original demand for arbitration. This assertion is unsupported by the record.

The trial court afforded Carman ample opportunity either to produce evidence that he was incompetent to proceed or to establish that he was entitled to arbitration. The record provides no basis to conclude that the trial court

10

abused its discretion in denying Carman's motion to reconsider the order entered on April 15, 2016.

We grant attorney fees to the tenants on appeal per their request under RCW 59.18.085, subject to compliance with RAP 18.1.

Affirmed.

Becker, J.

WE CONCUR:

Chun, J.

Andrus, J.

11