IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| MILWAUKIE LUMBER COMPANY, | ) | No. 82052-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VERISTONE FUND I, LLC, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — A party who willfully ignores a summons and complaint cannot later take advantage of the court's authority to vacate a default judgment entered in the action. Because the trial court found Veristone Fund I, LLC willfully ignored a properly served summons and complaint and substantial evidence supports its findings, the court did not abuse its discretion by denying Veristone's motions to vacate.

An award of compound postjudgment interest is strongly disfavored. Because the judgments entered by the trial court award compound postjudgment interest without explicit contractual authorization, the court erred.

The trial court awarded the Milwaukie Lumber Company (MLC) attorney fees without entering findings of fact, and it entered sanctions against Veristone without identifying a clear legal basis or entering findings of fact. Because findings of fact are required to allow review of both, remand is required.

Therefore, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

Veristone financed the development of five lots in Camas, Washington. The parcels at issue here are Lot 2, Lot 3, and Lot 4. Veristone received and recorded multiple deeds of trust on each lot.

MLC entered into a supply contract with Emerald Valley Development for sale and delivery of building materials to the lots. MLC made its last delivery to Lot 2 on July 19, 2017. On September 29, it filed a lien on Lot 2 for $38,027.95. MLC made its last deliveries to Lots 3 and 4 in December. On February 22, 2018, MLC filed liens on Lots 3 and 4 for $28,022.77 and $15,143.63, respectively.

On May 11, 2018, MLC filed summonses and complaints—one for each lot—to foreclose its three liens and have it declared the first-position lienholder. MLC alleged Veristone's deeds of trust were inferior to its liens. On May 30, a process server delivered the summonses and complaints to Veristone. About two weeks later, MLC filed amended complaints that were nearly identical to the original complaints and mailed them to Veristone.

Veristone never appeared. On July 2, MLC moved for entry of default judgments. The court granted its motions the same day, entering default judgments declaring MLC's interests superior to Veristone's.

On August 24, Veristone moved to vacate the default judgments. The court denied its motions, finding that Veristone had been properly served. The court

explained Veristone "chose not to respond" and had "a strategic reason why they waited to bring this motion to set aside."[1]

MLC sought entry of judgments against Emerald Valley and requested attorney fees. Veristone opposed those efforts. In its reply to Veristone's opposition filings, MLC requested "its fees for having to respond to this improper objection as sanctions under CR 11."[2] The court entered judgments identifying MLC as the creditor and Emerald Valley as the debtor. It awarded postjudgment interest of two percent per month based on MLC's contract with Emerald Valley. The court entered judgments for $87,128.41, including $29,577 in attorney fees, on Lot 2; $66,275.14 on Lot 3; and $49,926.03 on Lot 4. The court also entered orders requiring that Veristone pay MLC $29,577 for the Lot 2 litigation, $66,275 for Lot 3, and $49,926 for Lot 4.

Veristone appeals.

## ANALYSIS

### I. Vacating Default Judgment

We review a trial court's decision on a motion to vacate a default judgment under CR 60(b)(1) for abuse of discretion.[3] A court abuses its discretion where its decision rests on untenable grounds or was made for untenable reasons.[4]

---

[1] Report of Proceedings (RP) (Sept. 12, 2018) at 32-34.

[2] Clerk's Papers (CP) at 1264.

[3] Little v. King, 160 Wn.2d 696, 702, 161 P.3d 345 (2007) (citing Yeck v. Dep't of Labor & Indus., 27 Wn.2d 92, 95, 176 P.2d 359 (1947)).

[4] TMT Bear Creek Shopping Ctr., Inc. v. Petco Animal Supplies, Inc., 140 Wn. App. 191, 199, 165 P.3d 1271 (2007) (citing Showalter v. Wild Oats, 124 Wn. App. 506, 510, 101 P.3d 867 (2004)).

A. Vacation For Mistakes, Inadvertance, Surprise, or Excusable Neglect

A motion to vacate default judgment under CR 60(b)(1) presents a question of equity requiring the trial court to balance Washington's preference for resolving disputes on their merits with the value placed upon an organized, responsive, and responsible judiciary.[5]  The court weighs four factors when deciding this question:

> (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.[6]

But when a defendant caused the default by willfully failing to appear, the second factor outweighs the others because equity demands the judgment stand to avoid rewarding misconduct.[7]  "[E]quity will not allow for vacation of [a default] judgment if the actions leading to default were willful.  Willful defiance of the court's authority can never be rewarded in an equitable proceeding."[8]  The movant has the burden of demonstrating that equity favors vacating the judgment.[9]

MLC argues the court correctly denied Veristone's motions to vacate because it found Veristone was properly served and willfully failed to appear.

---

[5] Id. (citing Little, 160 Wn.2d at 703; Showalter, 124 Wn. App. at 510).

[6] White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968).

[7] TMT Bear Creek, 140 Wn. App. at 206.

[8] Id.

[9] White, 73 Wn.2d at 352.

Veristone contends it was not properly served with summonses, so it could not have intentionally failed to appear. If Veristone was properly served and chose to ignore the summonses, then, regardless of the strength of its defenses, the court did not abuse its discretion by denying the motions to vacate for all three lots.[10]

We review a ruling about proper service of process de novo.[11] But Veristone did not challenge the validity of the professional process server's affidavit of service, making it presumptively correct.[12] Veristone also did not challenge the court's finding of fact that it was properly served, making the finding a verity on appeal.[13] Instead, Veristone argues the court erred by relying upon written testimony and evidence, rather than live testimony, to determine service was proper. Because the decision to decide a motion on affidavits is "purely discretionary,"[14] we review the court's ruling for abuse of discretion.

CR 43(e) governs taking evidence on motions. CR 43(e)(1) provides that a trial court considering a motion "may hear the matter on affidavits" or "may direct that the matter be heard wholly or partly on oral testimony or depositions." But

---

[10] See TMT Bear Creek, 140 Wn. App. at 206 ("[E]quity will not allow for vacation of the judgment if the actions leading to default were willful.").

[11] Streeter-Dybdahl v. Nguyet Huynh, 157 Wn. App. 408, 412, 236 P.3d 986 (2010) (citing Pascua v. Heil, 126 Wn. App. 520, 527, 108 P.3d 1253 (2005)).

[12] Id. (citing Woodruff v. Spence, 75 Wn. App. 207, 210, 883 P.2d 936 (1994)).

[13] Rosander v. Nightrunners Transp., Ltd., 147 Wn. App. 392, 397 n.1, 196 P.3d 711 (2008) (citing In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004); RAP 10.3(g)).

[14] Rivard v. Rivard, 75 Wn.2d 415, 419, 451 P.2d 677 (1969).

when a determination requires evaluating witness credibility to resolve an issue of fact, the trial court can abuse its discretion by not holding an evidentiary hearing.[15]

In Rivard v. Rivard, divorced parents petitioned the court to clarify the father's visitation schedule.[16] The parties filed "sharply conflicting" affidavits, and the trial court heard argument on the matter before adopting the father's proposed visitation schedule.[17] The mother appealed and argued the trial court's decision was an abuse of discretion because it decided the motion without holding an evidentiary hearing.[18] The Supreme Court upheld the decision to resolve the matter solely on the affidavits because they "contained ample evidence upon which a ruling could be made as to visitation rights," and the mother did not otherwise show an abuse of discretion.[19]

By contrast, the court in Woodruff v. Spence remanded for the taking of live testimony when a buyer moved to vacate a seller's default judgment due to ineffective service of process.[20] The seller submitted an affidavit of service stating the buyer had been personally served on January 20, 1992, at his house in Renton.[21] The buyer submitted an affidavit stating he was not served, a

---

[15] Harvey v. Obermeit, 163 Wn. App. 311, 327, 261 P.3d 671 (2011) (citing Woodruff, 76 Wn. App. at 210).

[16] 75 Wn.2d 415, 451 P.2d 677 (1969).

[17] Id. at 416.

[18] Id. at 419.

[19] Id. at 420.

[20] 76 Wn. App. 207, 209-10, 883 P.2d 936 (1994).

[21] Id. at 209.

6

declaration stating he was in Bellingham on January 20, and declarations from two people who were at his house on January 20 denying that a process server visited that day.[22] The court concluded the affidavits and declarations presented an issue of fact that could be resolved only by assessing credibility.[23]

Here, MLC presented a valid affidavit of service and a declaration from the professional process server detailing how he served Veristone. He swore to personally serving Veristone's registered agent, Meghann Good, at Veristone's office with summonses and complaints, several exhibits, and notices of assignment to a judicial department. His declaration explained he asked the receptionist for Good, and the receptionist said she would get her. A woman identifying herself as Good appeared, looked at the documents, and acknowledged service. The server's contemporaneous handwritten notes, which were attached to his declaration, described Good's appearance.[24] A different affidavit of service from a different process server's recent personal service on Good largely corroborated this description.

Veristone submitted two declarations from Good contesting service. She declared, "I do not recall ever being personally served" and explained Veristone's internal record-keeping system did not show "that I, or anyone else at Veristone,

---

[22] Id. at 210.

[23] Id.

[24] See CP at 1633 (describing Good as a 40 year-old White woman with brown hair, standing 5'5'', and weighing 140 pounds); CP at 1757 (describing Good as a 40 year-old White woman with black hair, standing 5'3'', and weighing 140 pounds).

7

received the Summons and Complaint on May 30, 2018."[25] She contested the process server's description of her.[26] Veristone did not provide any evidence to corroborate Good's statements about service or its record-keeping system.

Veristone fails to show the court abused its discretion by declining to hold an evidentiary hearing. Good's general denial of having been served and bare assertion about Veristone's record-keeping system do not compel an evidentiary hearing. The process server's valid affidavit is presumptively correct,[27] and MLC corroborated it with the process server's detailed declaration and supporting notes. The minimal variations between the process server's description of Good and her description of herself are not compelling. As in Rivard, the evidence submitted was sufficient to decide the matter, even though the parties asserted different facts. Unlike Woodruff, Veristone did not corroborate its assertion that it was not served, despite having access to the documents and potential declarants needed to rebut MLC's affidavit of service. Veristone fails to show the court abused its discretion under CR 43(e)(1) by finding service of process was proper without

---

[25] CP at 58.

[26] Good described herself as standing 5'0'' tall and weighing 120 pounds. Unlike Streeter-Dybdahl, where service was ineffective when the process server claimed to personally serve a defendant identified as a 5'8'' tall, 140 pound man and the defendant was actually a 5'1'' tall, 110 pound woman, 157 Wn. App. at 411, the differences between Good's description and the process servers' are minor.

[27] Streeter-Dybdahl, 157 Wn. App. at 412 (citing Woodruff, 75 Wn. App. at 210).

holding an evidentiary hearing.[28]  Because Veristone was properly served, the question is whether Veristone's failure to appear was willful.

Veristone asserts a failure to appear is willful only if done knowingly. Assuming without deciding that this standard is correct, the record supports the trial court's conclusion that Veristone willfully failed to appear.

The trial court found Veristone was properly served, meaning it knew of its obligation to appear.  In its oral ruling on the motions to vacate, the court found Veristone "chose not to respond" and had "a strategic reason why they waited to bring this motion to set aside: so that [MLC] could not cure [allegedly deficient service]."[29]

Veristone challenges the court's finding of willfulness, contending the court lacked a basis in law or fact to conclude it had a strategic reason to not appear. Although Veristone did not assign error to any findings of fact, this argument is best understood as a substantial evidence challenge.  A finding of fact is supported by substantial evidence when there is sufficient evidence to convince a

---

[28] See Northwick v. Long, 192 Wn. App. 256, 266-68, 364 P.3d 1067 (2015) (affirming denial of a motion for an evidentiary hearing to resolve credibility determination on service of process where the defendant had opportunity to discover process server's assertions).

[29] RP (Sept. 18, 2018) at 32-34.  The trial court offered this explanation when asked whether the court was making a finding of willfulness. It is reasonably viewed as a finding of willfulness in support of the court's denial of Veristone's motions to vacate.  See Grieco v. Wilson, 144 Wn. App. 865, 872, 184 P.3d 668 (2008) ("And if findings of fact are incomplete, the appellate court may look to the superior court's oral decision to understand the court's reasoning.") (citing Lakewood v. Pierce County, 144 Wn.2d 118, 127, 30 P.3d 446 (2001)).

reasonable person of its truth.[30]  As the party challenging the finding, Veristone has the burden of proving it was unsupported.[31]

Veristone was properly served with summonses, complaints, and scheduling notices.  It was reminded of the action a few weeks later when it received three amended complaints in the mail, each with a cause number, naming it as a defendant and alleging its deeds of trust were inferior to MLC's liens.  When addressing service of process, Good's declarations did not explain what happened to the summonses and complaints properly served on Veristone and did not identify any mistakes to explain Veristone's failure to appear.  Substantial evidence supports the trial court's conclusion that Veristone chose not to respond.

MLC also noted to the trial court that Veristone had a strategic reason to avoid responding before the 90-day limitation period of RCW 60.04.141 ran, and the court accepted this explanation.  By delaying its motion to vacate, Veristone could avoid alerting MLC in time to cure any defect in service.

Veristone challenges this reasoning on several grounds, none of which are compelling.  In its opening brief, Veristone contends the time limit on service applies only to service upon the owner and not a secured lender.  But, as pointed out by MLC in its brief, <u>Bob Pearson Construction Inc. v. First Community Bank of</u>

---

[30] <u>Norcon Builders, LLC v. GMP Homes VG, LLC</u>, 161 Wn. App. 474, 497, 254 P.3d 835 (2011) (citing <u>Brin v. Stutzman</u>, 89 Wn. App. 809, 824, 951 P.2d 291 (1998)).

[31] <u>Id.</u> (citing <u>Fisher Props., Inc. v. Arden-Mayfair, Inc.</u>, 115 Wn.2d 364, 369, 798 P.2d 799 (1990)).

Washington expressly holds the 90-day time limit on service extends to any party asserting an interest in the property, so service past 90 days prevents enforcement of the lien against the unserved party.[32] Veristone contends that Bob Pearson should not be considered on appeal because it was not cited to the trial court. But the issue was squarely before the trial court, and citing authority addressing that issue is proper on appeal. Veristone also contends no evidence shows it was actually aware of the 90-day time limit on service, but it cites no authority requiring explicit evidence of actual awareness.

For the first time during oral argument in this court, Veristone argued that the trial court's reasoning was incorrect because RCW 60.04.141 actually provides "eight months and 90 days" from the date a lien was filed to serve all parties. Veristone is incorrect. The specific statutory rules for filing and service of process in RCW 60.04.141 "must be followed in order to prevent expiration of a lien."[33] The plain language of the statute expressly provides service must be made "within ninety days of the date of filing the action."[34] And Washington courts confirm the time limit for service is 90 days from the date of filing the action. "To prevent expiration of a valid lien, the lien claimant must (1) file a lawsuit within 8 months of

---

[32] 111 Wn. App. 174, 179, 43 P.3d 1261 (2002) (citing Davis v. Bartz, 65 Wash. 395, 397, 118 P. 334 (1911)).

[33] Diversified Wood Recycling, Inc. v. Johnson, 161 Wn. App. 859, 886, 251 P.3d 293 (2011) (citing Pac. Erectors, Inc. v. Gail Landau Young Constr. Co., 62 Wn. App. 158, 165, 813 P.2d 1243 (1991)).

[34] RCW 60.04.141 (emphasis added).

recording the lien and (2) make service . . . within 90 days of filing suit."[35] A lien claimant does not have eight months and ninety days from the filing of a lien to serve an action for foreclosure of the lien. And because the 90 day limit is a statutory requirement, there is a reasonable inference that Veristone and its attorneys were aware of the time limit for service.

MLC recorded its lien on Lot 2 on September 29, 2017. MLC recorded liens on Lots 3 and 4 on February 22, 2018. It had to file suit to enforce the lien on Lot 2 by May 29, 2018. MLC chose to enforce all three liens at the same time and filed complaints to enforce them on May 11, 2018. It then had 90 days from May 11, 2018, to serve the lots' owners and any other parties against whom MLC wanted to enforce its rights as a lienholder.[36] If MLC failed to properly serve Veristone by August 9, 2018, then its foreclosure as to all three lots could not impact Veristone. Veristone received amended complaints by mail in mid-June and spoke with MLC on August 7 about the default judgments. If it had genuine questions about proper service, it did not raise them until August 24, when it filed the motions to vacate. From this, a reasonable factfinder could conclude Veristone purposefully waited until after expiration of the 90-day limitations period to allege insufficient service of process. Substantial evidence supports the court's finding that Veristone had a strategic reason it chose not to appear. Because

---

[35] Diversified Wood, 161 Wn. App. at 887; see Bob Pearson, 111 Wn. App. at 179 (RCW 60.04.141 "requires a lien claimant to sue within eight months and serve within 90 days any party against whom the claimant seeks to enforce its lien.").

[36] Diversified Wood, 161 Wn. App. at 887; Bob Pearson, 111 Wn. App. at 179.

Veristone chose not to appear for a strategic reason, its failure to appear was willful.[37]

The strength of a party's defenses are immaterial if it declines to raise them in court by willfully failing to appear.[38]  Because Veristone willfully failed to appear, the court did not abuse its discretion by denying Veristone's motions to vacate the default judgments.

### B. Vacation Due To Irregularity

Veristone argues the court abused its discretion because MLC obtained its default judgment through irregularities in its complaints.  Both MLC's original and amended complaints stated Veristone's "deeds of trust are inferior in priority to MLC's claim of construction lien."[39]  Veristone alleges these were misrepresentations and warranted vacation.

An error of law is not an irregularity requiring vacation of a judgment under CR 60(b).[40]  Vacation may be warranted under CR 60(b)(1) from irregularities "relating to want of adherence to some prescribed rule or mode of proceeding," such as "procedural defects unrelated to the merits."[41]

---

[37] We note a finding of willfulness is not limited to when a party has a strategic reason for not appearing.

[38] See TMT Bear Creek, 140 Wn. App. at 206 ("[E]quity will not allow for vacation of judgment if the actions leading to default were willful.").

[39] CP at 4, 16.

[40] In re Marriage of Tang, 57 Wn. App. 648, 654, 789 P.2d 118 (1990) (citing Burlingame v. Consol. Mines & Smelting Co., 106 Wn.2d 328, 336, 722 P.2d 67 (1986)).

[41] Id. (citing In re Adamec, 100 Wn.2d 166, 174, 667 P.2d 1085 (1983); 4 L. ORLAND, WASHINGTON PRACTICE: RULES PRACTICE § 5713, at 543 (3rd ed. 1983)).

Veristone compares this case to Mosbrucker v. Greenfield Implement, Inc..[42] Mosbrucker is not apt. The Mosbrucker defendant did not willfully fail to appear, and the plaintiff's inaccurate factual allegations caused a procedural irregularity affecting "the integrity of the proceedings."[43] Thus, the court concluded the equities favored vacation.[44]

Here, however, MLC's allegations about lien priority presented legal questions because lien priority is a question of law.[45] MLC brought suit to have this legal question answered. Because Veristone's alleged error is actually an alleged error of law, and Veristone fails to allege a procedural irregularity unrelated to the cases' merits, the court did not abuse its discretion by refusing to vacate.[46]

II. Judgment Interest Rate & Attorney Fees From Trial

Veristone argues the court erred by entering a judgment interest rate of two percent per month and by awarding MLC attorney fees without entering findings of fact. MLC contends both issues are beyond the scope of this appeal.

It is well-established that "[a] CR 60(b) motion is not a substitute for appeal and does not allow a litigant to challenge the underlying judgment."[47] Exceptions

---

[42] 54 Wn. App. 647, 774 P.2d 1267 (1989).

[43] Id. at 652, 654.

[44] Id. at 653-54.

[45] Kim v. Lee, 145 Wn.2d 79, 85-86, 31 P.3d 665 (2001).

[46] Tang, 54 Wn. App. at 654.

[47] Winter v. Dep't of Soc. & Health Servs. on behalf of Winter, 12 Wn. App. 2d 815, 830, 460 P.3d 667 (citing Bjurstrom v. Campbell, 27 Wn. App. 449, 451, 618 P.2d 533 (1980)), review denied, 196 Wn.2d 1025, 476 P.3d 565 (2020); see, e.g., Pamelin Indus., Inc. v. Sheen-U. S. A., Inc., 95 Wn.2d 398, 403, 622 P.2d

to this rule exist for issues affecting fundamental constitutional rights, for challenges to the trial court's jurisdiction, and—within our discretion under RAP 12.2—as justice may require.[48]  Veristone does not argue its challenges are constitutional or to the court's jurisdiction, and it does not mention RAP 12.2. However, because these issues could affect the recovery of other junior lienholders, despite Veristone's waiver of its right to contest the judgments' merits by willfully refusing to appear, we will consider them.

### A. Postjudgment Interest Rate

The court awarded postjudgment interest to accrue at a rate of "2% per month."[49]  The court also awarded prejudgment interest.  Veristone challenges only the postjudgment interest rate, arguing it violates the 12 percent cap on postjudgment interest required by RCW 4.56.110(4) and RCW 19.52.020(1).

Awards of postjudgment interest are reviewed de novo as a question of law.[50]  A compound postjudgment interest rate is disfavored, so the parties' agreement must expressly provide for it.[51]

---

1270 (1981) ("We are mindful of the rule that an error of law may not be corrected by a motion pursuant to CR 60(b), but must be brought up on appeal.").

[48] State v. Santos, 104 Wn.2d 142, 145-46, 702 P.2d 1179 (1985).

[49] CP at 686, 1415, 2129.

[50] TJ Landco, LLC v. Harley C. Douglass, Inc., 186 Wn. App. 249, 256, 346 P.3d 777 (2015) (citing Sintra, Inc. v. Seattle, 96 Wn. App. 757, 761, 980 P.2d 796 (1999)).

[51] Xebek, Inc. v. Nickum & Spaulding Assocs., Inc., 43 Wn. App. 740, 743, 718 P.2d 851 (1986) (citing Goodwin v. Nw. Mut. Life Ins. Co., 196 Wash. 391, 402-03, 406, 83 P.2d 231 (1938)).

MLC argues its contract with Emerald Valley authorizes this compound interest rate, analogizing to <u>Xebek, Inc. v. Nickum & Spaulding Associates, Inc.</u>[52] In <u>Xebec</u>, the court considered whether two contracts authorized an award of compound interest.[53] One contract provided "[l]ate charges of 1½% per month shall be applied to all billings which have not been paid within thirty (30) days after receipt."[54] The other contract required that the "[c]ontractor will submit invoices twice monthly for services rendered under this Agreement. The terms of payment are net thirty (30) days, or a 1½ percent per month late charge will become effective."[55] The court concluded these terms were "not explicit enough" to authorize an award of compound postjudgment interest.[56] However, the court affirmed because the trial court relied upon the 1.5 percent interest rate to award a flat postjudgment simple interest of 18 percent per annum.[57]

MLC's contract with Emerald Valley contained a provision allowing for interest to accrue:

> Applicant's signature attests financial responsibility, ability to pay [MLC] invoices in accordance with the following terms: 1% 10th, net 11th. Invoices are considered to be past due on the 12th of the month. A late payment charge of 2% per month will be assessed after the 26th ($2 minimum). Applicant agrees to pay reasonable

---

[52] 43 Wn. App. 740, 718 P.2d 851 (1986).

[53] <u>Id.</u> at 742.

[54] <u>Id.</u> at 743.

[55] <u>Id.</u>

[56] <u>Id.</u>

[57] <u>Id.</u>

attorney fees, cost of collection and court costs that may arise in the enforcement of these terms.[58]

Because the facts surrounding the contract are undisputed, we interpret the contract de novo as a matter of law.[59]

The first three sentences set payment requirements for the ordinary course of business. The fourth sentence authorizes additional payments "that may arise in the enforcement of these terms."[60] Thus, a "late payment charge of 2% per month" refers to prejudgment charges on sums already owed. Like Xebec, the contract does not expressly provide for a postjudgment compound interest rate. Because the contract does not specify a postjudgment interest rate and compounding postjudgment interest is strongly disfavored, the court was limited to an award of simple interest per annum.

B. Attorney Fees From Trial

Veristone challenges the amounts of attorney fees awarded, arguing the court failed to enter adequate findings of fact to support its awards. When awarding attorney fees, the trial court "must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question."[61] The findings must "show how the court resolved disputed issues of fact and the conclusions must explain the court's

---

[58] CP at 23.

[59] Jones Assocs., Inc. v. Eastside Props., Inc., 41 Wn. App. 462, 465, 704 P.2d 681 (1985) (citing Yeats v. Estate of Yeats, 90 Wn.2d 201, 204, 580 P.2d 617 (1978); In re Estate of Larson, 71 Wn.2d 349, 354, 428 P.2d 558 (1967)).

[60] CP at 23.

[61] SentinenC3, Inc. v. Hunt, 181 Wn.2d 127, 144, 331 P.3d 40 (2014).

analysis."[62] Because the trial court did not enter findings of fact or conclusions of law for its attorney fee awards, thereby preventing review of its reasonableness determinations, remand is required.[63]

MLC argues that CR 55(b)(1) vitiates this requirement because it states "[f]indings of fact and conclusions of law are not necessary under this subsection even though reasonable attorney fees are requested and allowed." The rules of civil procedure are interpreted to effectuate the drafters' intent.[64] The plain language of CR 55(b)(1) does not preclude entry of findings of fact for an award of attorney fees on default judgment for an amount certain. As noted, effective appellate review requires findings revealing how the trial court arrived at the amount of attorney fees. MLC cites no authority for the proposition that the drafters of CR 55(b)(1) intended to prevent meaningful review of attorney fees. Remand is required for entry of findings of fact.

III. Sanctions

At the same time the trial court entered a judgment on Lot 2, it also entered an "Order Granting Plaintiff's Motion for Entry of Judgment."[65] For Lots 3 and 4, it simultaneously entered amended judgments and "Order[s] Granting Plaintiff's

---

[62] Berryman v. Metcalf, 177 Wn. App. 644, 658, 312 P.3d 745 (2013).

[63] Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998).

[64] Denney v. City of Richland, 195 Wn.2d 649, 653, 462 P.3d 842 (2020) (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

[65] CP at 1412.

Motion[s] to Correct Judgment."[66]  The three orders granting MLC's motions to enter or correct judgments also required that Veristone pay MLC $29,577 for the Lot 2 litigation, $66,275 for Lot 3, and $49,926.03 for Lot 4.

Although the amounts correlate to the fee awards imposed against Emerald Valley, the orders do not state a basis for the award or explain the amounts awarded against Veristone.  MLC's motions to enter or correct judgment requested sanctions against Veristone under CR 11 "in the amount of [MLC's] fees for having to respond to this improper objection."[67]  If the court's award to MLC was a sanction against Veristone for violating CR 11, the trial court must "specify the sanctionable conduct in its order."[68]  "The court must make a finding that either the claim is *not* grounded in fact or law and the attorney or party failed to make a reasonable inquiry into the law or facts, *or* the paper was filed for an improper purpose."[69]  Remand is appropriate when the trial court fails to do so.[70]

Remand is required for the trial court to articulate the basis for the awards and to enter explicit findings supporting the amount of any awards.  If the awards are based upon a violation of CR 11, the court must enter specific findings identifying the sanctionable conduct and the basis for a reasonable sanction.

[66] CP at 685, 689, 2128, 2132.

[67] CP at 528, 1261, 1970.

[68] Heckard v. Murray, 5 Wn. App. 2d 586, 595, 428 P.3d 141 (2018) (quoting Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994)).

[69] Biggs, 124 Wn.2d at 201.

[70] See id. at 201-02 (remanding for entry of findings when the trial court did not make adequate findings to explain CR 11 sanctions).

## IV. Attorney Fees On Appeal

Both Veristone and MLC request attorney fees from this appeal under RAP 18.1 and RCW 60.04.181(3).  RCW 60.04.181(3) authorizes an award of attorney fees to the prevailing party in a lien priority action, including fees incurred in proceedings in the Court of Appeals.  Because MLC prevails on the issues involving lien priority, we award it reasonable attorney fees upon compliance with RAP 18.1(d).

## V. Conclusion

The trial court did not abuse its discretion by denying Veristone's motions to vacate default judgments.  The court erred by entering an award of compound postjudgment interest when it was limited to an award of simple interest per annum.  Remand is required for entry of findings of fact for the court's award of attorney fees and for the sanctions it entered against Veristone.

Therefore, we affirm in part, reverse in part, and remand.

_____

WE CONCUR:

_____  _____